(162 App. Div. 256)

MARSH v. CONSUMERS' PARK BREWING CO. et al.

(Supreme Court, Appellate Division, Second Department.     May 8, 1914.)

WILLS (§ 597*)—CONSTRUCTION—ESTATES AND INTERESTS CREATED.

Testator devised all his estate, real and personal, to his wife during her life, and on her death to his children equally, share and share alike, "the descendants of any deceased child to take the share which his or her deceased parent would take if living." *Held*, that the will as a whole shows the intention to vest in the children at the death of the testator an absolute fee, and that the substitutional clause refers to death at some time before that of the testator, and not of the life tenant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1319–1326; Dec. Dig. § 597.*]

Appeal from Special Term, Kings County.

Action by Helen E. Marsh against the Consumers' Park Brewing Company, defendants; Caroline M. Kinsey and another being impleaded. From a judgment for plaintiff (82 Misc. Rep. 186, 143 N. Y. Supp. 359), defendant Brewing Company appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLETON, and PUTNAM, JJ.

Lynn C. Norris, of Brooklyn, for appellant.

Paul Bonynge, of New York City (Henry Pegram, of New York City, on the brief), for respondents.

Sidney V. Lowell, of Brooklyn, amicus curiæ.

THOMAS, J. Leonard Marsh died in 1870, leaving a will dated in 1868, which, with a codicil made shortly thereafter, was admitted to probate in Vermont, where his residence had been, and letters were issued to Anne L. Marsh, his widow. His heirs at law were three sons and one daughter, who in 1884 quitclaimed land to the widow, who, in May of 1884, conveyed by full covenant deed to Sidney V. Lowell, and from him, by mesne conveyances begun in 1885, the land in question came to the appellant, Consumers' Park Brewing Company, in April, 1899, and 1900. It is subject to a mortgage held by the defendant Farmers' Loan & Trust Company, as trustee. One of the sons, George F. Marsh, died before the widow, leaving the respondents as his heirs at law, who assert title to an undivided one-quarter of the land. They base their claim upon the fact that their father, one of the four remaindermen, died pending the expiration of the life estate in the widow, and that they took by substitution under the will.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The will, so far as here important, is as follows:

"Second. All the estate real and personal * * * whatsoever * * * which shall belong to me at the time of my decease and the rents, issues, income, and profits thereof, I give, devise and bequeath to my wife Ann during her natural life in lieu of all her dower share thirds or portion of my estate, and on her death I give, devise and bequeath the same to my children equally share and share alike, the descendants of any deceased child to take the share which his or her deceased parent would take if living. And I hereby authorize and empower my said wife as executrix of this my will to sell and convey any and all my real estate wheresoever the same may be situated at public or private sale as she may deem proper and to receive and invest and call in and reinvest the proceeds thereof, and the income thereof for the benefit of my estate and it is my wish and direction that as soon as it can be done consistently with the interest of my estate that my real estate be so sold and invested to raise an income for the support of my said wife and my children. And all real estate which I may own in common with my brother or any other person I authorize my said executrix by agreement with my cotenant or cotenants by deed or otherwise to make partition thereof among the owners, so that my share or interest therein may be held by my said executrix, and managed and sold and disposed of in severalty as part of my estate."

After providing for a special executor to partition or sell land in the state of New Jersey, it is provided:

"Fifth. And as to all my said real estate and property situated and being in the state of New York, I hereby appoint Charles L. Benedict of the city of Brooklyn * * * special executor of this my will with full power by and with the consent of my said wife to be manifested by her signing the deed or deeds with him to partition or sell and convey the said real estate or any portion thereof, and to receive the proceeds thereof and pay the same to my said wife my general executrix as aforesaid for the purposes of this my will."

The codicil is as follows:

"It is my wish that each of my sons shall receive a collegiate education and also such professional or business education as they shall respectively desire, and also that my daughters shall be thoroughly educated and it is my will and I hereby direct that if in the judgment and discretion of my wife, in order so to complete the education of my children and to provide for the other necessary expenses of the family, and for her own support the rents, income and profits of my estate shall be insufficient, then my said wife shall from time to time at her discretion use and expend for the purposes aforesaid so much of the principal of my estate as she may find necessary for such purposes."

If, from the whole will, the intent appears that the words "the descendants of any deceased child to take the share which his or her deceased parent would take if living" refer to death during the life of the testator, then George F. Marsh took an absolute fee and was entitled to convey his interest, and in such case his grandchildren would take no interest, and the judgment is erroneous. If, however, the will refer to the death of George at any time before his mother, the life tenant, then his estate is defeated by his earlier death.

At the testator's death his children were unmarried and under age, and the land was in three states. The part in New York was in the outskirts of Crow Hill, Brooklyn, unimproved, with a single rough street through it, given over to squatters, worth about $4,000, and burdened apparently with assessments to the amount of some $23,000, the illegality of which did not appear on their face. Marsh v. City of Brooklyn, 59 N. Y. 280. Under such conditions, it is apparent that

the property was not marketable at any substantial price and would attract only such purchasers as would hazard litigation. The widow lived for 34 years, and meantime the land or the avails of it, according to respondents' contention, were not alienable because it could not be known whether the remaindermen would keep the title. Several provisions in the will and considerations in construction declare intention to refer the possible death of a child to the lifetime of the testator. (1) Power is given to the special executor in New York to partition or sell the land in that state. Although at the date of the will, but not when it took effect, the testator owned the land in common with his brother, the power to partition is not related to that, as the power to partition such land is given specifically to the executrix. Moreover, the power to the special executor in New York relates to "my said real estate * * * to partition or sell and convey the said real estate or any portion thereof." Why partition land to those who would take a defeasible title? (2) The law favors the absolute vesting of the estate in the testator's children as soon as possible after his death. Riker v. Gwynne, 201 N. Y. 143, 149, 94 N. E. 632. (3) The testator is deemed to contemplate, at the time he made the will, the conditions at the time it should take effect. Matter of Hoffman, 201 N. Y. 247, 255, 94 N. E. 990. Here the children are identified in the testator's mind as those who, at his death, should receive education according to their sex and vocation. This indicates a conception of them as separate persons, and that they should be treated as such. Hence the gift is not to them as a class, although in such case the share of the child dying before distribution would go to his representatives. Tucker v. Bishop, 16 N. Y. 402, 404. It tends to show that they did not take as a class in that they took "equally share and share alike." Moffett v. Elmendorf, 152 N. Y. 475, 484, 485, 46 N. E. 845, 57 Am. St. Rep. 529. In the absence of clear language indicating a gift to a class, it should be held that they take as tenants in common. Matter of Russell, 168 N. Y. 169, 176, 61 N. E. 166; Trowbridge v. Coss, 126 App. Div. 679, 684, 110 N. Y. Supp. 1108, affirmed 196 N. Y. 596, 89 N. E. 1114. (4) But it is of highest importance on the question of intent that the income is appropriated and the corpus appropriable to the education and support of the children and the support of the wife in conjunction with them. If the children took the entire income, it would point to intention to vest the remainder in fee absolute. Tucker v. Bishop, supra. Partial appropriation may not be significant. But the appropriation of the remainder, even in the mother's discretion, tends to show that it belongs to the children. Everitt v. Everitt, 29 N. Y. 39, 49; Torrey v. Shaw, 3 Edw. Ch. 356, 359. Their enjoyment of it at the widow's death is thereby anticipated, even to consumption, if necessary. What they could enjoy at one time could be used for them at the earlier period. This indicates vesting the interest with provision for *present* enjoyment, if there be need. (5) But note that in all this there is no anticipated wants of the grandchildren and solicitude for their education or support. (6) In theory or in fact there is no value, and peculiarly so in this instance, in the estate vesting unless it do so absolutely at the testator's death. When does the child take title to the remain-

der? Certainly at the death of the testator. But, if at that time the child be dead, the title vests in his issue. · I regard it as quite a profitless formality to vest the title in a child at his father's death, and, if he die before the life tenant, take it from him and devolve it under the will on his descendants. Why such circuity? For whose benefit? For what useful purpose? Under such possible vicissitude the remainder is of no value to the child or his children during the life estate, in this case for 34 years. Neither could use the remainder, even with the concurrence of the life tenant, however pressing the exigency, except for the limited purposes of the power. The child could not support himself or his children by means of it. Why should the law favor such nominal vesting? Whatever it may be called in legal nomenclature, such a remainder in fact is as contingent in the child as in his children. It is to the one or to the other on the uncertainty of the child's life. Such vesting is a profitless semblance of interest in property, ownership unpotential and bereft of usufructuary power. The testator, as I consider, would have been quite confused had he been advised that in his simple will inhered such subtleties, and that he was casting a title so elusive that it might after his death escape his children and finally rest upon some indefinite descendants dissociated from his own life.

I should pause here, as the will speaks so forcibly and clearly. But it is said that there is a rule of construction that, in absence of other intention, requires the death of the child to be referred to a period limited by the death of the life tenant, and that such rule should be applied. Decisions moderately recent would have that effect, if regard be had to the bare words in the second paragraph of the will. But the testator and the lawyer (if such there was) who drew the will could not have so understood the words. When the will and even the conveyances now in question were made, the substitutionary provision found in the second paragraph of the will, "the descendants of any deceased child to take the share which his or her deceased parent would take if living," in the absence of indications of other intent, were referable to a period before the death of the testator. Such rule of interpretation by solemn and considerate adoption of the highest court of the state had been declared—declared to the very end that it should become definitely and enduringly a means of determining testamentary intention. For more than half a century thereafter the Court of Appeals, by decisions from time to time, assured lawyer and layman that the precept was fundamental, and so it became profoundly embodied in the law of interpretation. A rule emanating from the very summit of judicial power, with such accretion of authority as may come from repetition of decision, should not be reversed to the detriment of instruments that have been drawn in just confidence of its reality.

In 1840 the highest court of this state decided Moore v. Lyons, 25 Wend. 119, and laid down a rule of construction that was never doubted, but always followed until long after the conveyances involved in the action at bar had been made. The president of the Senate, Luther Bradish, distinguished in civil and judicial life, wrote an opinion at length reviewing decisions of this country and England, and he was followed by Chancellor Walworth and Senator Verplanck in dis-

criminating discussion, while 13 senators concurred, with three dissenting. The will was:

"I give and devise unto the said negro-woman Mary, my dwelling house and lot. * * * To have and to hold the same unto her, the said Mary, for and during her natural life; and from and after her death, I give and devise the said dwelling house * * * to Susan, Jane and Betsey, three daughters of said Mary, or *to the survivors or survivor of them*, their or her heirs and assigns forever."

In the Supreme Court, Nelson, C. J., in a brief opinion had said that the words of survivorship referred to the death of the life tenant. But the Court of Errors decided that they referred to death in the lifetime of the testator. The president of the Senate premised his opinion with the statement that he considered "the rule of law to be adopted in this case as one of great general importance and in this court new," and said:

"The solution of this question involves the decision of the main point above stated, viz.: *'To what period does a general clause of survivorship refer?'* "

The opinion, after some reference to decisions in England, says:

"There have been, however, a very few cases where either under a mistake as to the authorities upon this subject, or from peculiar views of individual judges, the general rule has been somewhat departed from, but not to an extent sufficient, in opposition to the great weight of authority to the contrary, to change the rule."

Then the opinion discusses certain cases relating to real estate tending to state a rule other than that adopted in the case at bar, and shows that in Shergold v. Boone, 13 Vesey, 375, Sir William Grant corrected the hasty expression used by him in Brown v. Bigg, 7 Vesey, 280. Then it is said:

"The only direct authority, therefore, sustaining a contrary doctrine, is that of Sir John Leach in Cripps v. Wolcott, decided in 1819."

And it is added that the rule there adopted was put upon the authority of cases named, and that it was believed that such cases, "upon a careful examination, will be found not to sustain the rule thus laid down by Sir John Leach." It is not my purpose to follow further the learned and careful opinions, but to illustrate that the decision was made under due appreciation of its importance and with commensurate research. Chancellor Walworth said:

"The weight of authority, both here and in England, therefore, unquestionably is in favor of applying the terms of survivorship, upon the devise of a remainder, to the death of the testator, instead of the time of the termination of the particular estate, where it is necessary to give effect to the probable intention of the testator in providing for the issue of the objects of his bounty, upon the death of their parents before the time appointed for the remainder to vest in possession, and especially where the devise is to the individuals by name and not to them as a class."

The opinion of Senator Verplanck is significant in that it states that he had "come to the conclusion that the words used by the testator had, at the time he employed them, acquired a strict, technical, legal sense, different from that of ordinary usage, and this technical sense

he must be presumed to have intended, unless other circumstances, or other parts of the will, denote a different intent"; and he quotes the words of Chief Justice Denman that "technical words of known legal import must have their legal effect, unless it is perfectly clear that the testator did not mean to use the words in their proper sense." So that decision was intended to be, as it did become, fundamental in establishing a fixed rule for the interpretation of wills, a rule, of course, yielding to evidences of contrary intention. I shall herein refer to the case and those that followed it as "primary authorities."

After 33 years, the Court of Appeals decided Livingston v. Greene, 52 N. Y. 119. The will gave a life estate to the widow, and remainders to children, who were later mentioned by name, as follows:

"From and after the decease and death of my beloved wife Frederica, I give and bequeath all my real estate * * * to all my children, and to their heirs and assigns forever, to be equally divided, share and share alike; and should any of my children die and leave lawful heirs, such heirs to receive the portion that their parent would have been entitled to had such parent lived."

Then the gift is repeated, particularizing the names of the legatees. The ninth paragraph of the will states:

"On the event happening of the death of my wife Frederica Livingston, and on a division of my estate in equal shares amongst my children as named in the seventh section of this my will, I hereby declare such shares to be an estate in fee to them and their heirs or assigns and they or either of them are empowered to give good and sufficient deeds for his, her or their shares of my real estate."

Judge Peckham wrote:

"But it is claimed that, in looking at all the provisions of the will, it was the intention of the testator that his children so dying before his widow should take no estate; that, if they took a vested remainder at testator's death, still it was defeated by their death before the widow. The case of Moore v. Littel, 41 N. Y. 66, is cited to sustain this position. It fails to do so. There the estate was defeated by the death of one who would have been an heir of the particular estate made, had he survived. But he died during the existence of the particular estate, and hence never became an 'heir.' * * * In regard to the purpose of this will, it will not do to depart from well-settled rules of construction, from the meaning which authorities, well considered, have attached to the language; the same language, in substance, here employed."

For authority, reference is made to Moore v. Lyons, 25 Wend. 119. The opinion then gave a further reason for the decision. In 1877, in Embury v. Sheldon, 68 N. Y. 227, a similar will was interpreted, and Livingston v. Greene and Moore v. Lyons were stated to be authorities for the decision. There the gift was in trust to receive the rents and profits during the life of the testator's son J., and to pay the net amount in equal proportions to J., A., D., and P. After the death of J., one-fourth of the residue was given to his children and one-fourth to each of the other children of the testator, and then it was provided that in case of the death of A., D., or P., "leaving lawful issue surviving them," "such issue shall take, of income as well as principal, the share which the parent would have been entitled to if living; and should no lawful issue survive them, the share of the one so dying shall go to

the survivors" of the three and to the children of J. in equal proportions. D. died after the death of the testator and during the life of J., leaving the plaintiff, the widow, and one child, and a will whereby he gave all his estate to his widow. The son died in infancy. It was decided that the death of the child meant death during the lifetime of the testator, and that upon his death D. took an absolute vested remainder which passed to plaintiff under his will.

I wish to emphasize the distinct approval of the rule laid down in the earlier cases. While it was also said that "presumed intent" was affirmed by other provision in the will, referring to Livingston v. Greene, it was also stated:

"This case is directly in point, and not so strong as the case at bar."

In Matter of Accounts of Mahan, 98 N. Y. 372, decided in 1885, E. devised two lots to her executor, with discretionary power to sell, in trust, to collect the income or proceeds of sale, and to pay therefrom to her mother annually a specific sum during life, and sums necessary for the support and education of her son T., during his minority, and to divide the balance among her three other children. Upon the death of the mother and the arrival at age of J., she gave one lot or the avails thereof to J., "his heirs, executors, administrators, and assigns," and the residue of her property to her three other children, "the survivor or survivors of them." J. became of age, and then the mother of the testatrix died, and but one of the three children named in the residuary clause was living. It was decided that the words of survivorship referred to the death of the testatrix, and that the limitation of the residuary took effect as a valid remainder at that time, and that therefore the representatives of the two deceased children were entitled to their respective shares of such estate. Among other authorities cited was Moore v. Lyons.

In 1892, in Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008, the will was substantially the same as in the case at bar, and was:

"I give and devise unto my * * * daughters, Catherine * * * and * * * Russell, all my real property * * * and the rents, * * * for and during the term of their natural lives, and from and after the decease of my said daughters, * * * and each of them, I give and bequeath the said premises No. 356 Cherry street to James Russell the son of my said daughter, Bridget Russell, and upon the like events I give and bequeath the said premises No. 358 Cherry street to James Barry and Ellen Barry the children of my son Michael Barry now deceased to be divided equally between them and their heirs share and share alike the child or children of a deceased child taking the share which his, her or their parent would have taken if living."

The decision was that:

"The two grandchildren, James Barry and Ellen Barry, who survived the testator, took upon his death a vested remainder in fee in the premises in question, and that the provision for their issue was by way of substitution in case of the death of the parent during the life of the testator."

Both Moore v. Lyons and Livingston v. Greene were cited as authority, and Judge Andrews said:

"We think the present judgment cannot be maintained without departing from settled rules of construction which have become landmarks of property."

In Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515, decided in 1894, the will gave to the testator's wife the use of all of the property for her life, and the second subdivision of the will was:

"I give, * * * to my children, Alfred, * * * Charles, * * * and Clara * * * the rest, residue and remainder of my property in equal proportions, but in the case of the death of my sons, Alfred and Charles E., or either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston."

It was decided that the children in equal shares owned the remainder, and that the second subdivision referred to the event of the death of the son in the lifetime of the testator, and after stating the general rule as expressed by Judge Rapallo in Matter of N. Y., L. & W. R. Co., 105 N. Y. 92, 11 N. E. 492, later discussed, it was said:

"The rule and its reasons thus stated have been recognized by the courts of England and this state for many years"—

and for authority, among other cases, reference was made to Moore v. Lyons, Livingston v. Greene, and Nelson v. Russell. The decision was unanimous. The question arose again in 1894, in Miller v. Gilbert, 144 N. Y. 68, 38 N. E. 979, where there was a life estate to the widow, then a remainder to named children "or their heirs," and it was said:

"It is quite inconceivable that he supposed the words created a substitutionary bequest or devise in the event of the death of a son before his mother, but it may more reasonably be assumed they were ignorantly used; it is a case where the court might substitute 'and' for 'or.' * * * If these words are given the full force and effect claimed for them, they would fall within the rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that, if such devisee survives the testator, he takes an absolute fee. Stokes v. Weston, 142 N. Y. 433 [37 N. E. 515], and cases cited."

In Morgan v. Collins, 152 App. Div. 158, 136 N. Y. Supp. 605, the will gave the residuary estate to the children named, share and share alike, "the issue of any deceased child to take the share the parent would have taken if living." An undivided one-third of the property was given to the wife for life, and thereafter to the same children with the same words of substitution. The question was whether the widow and children could convey a good title, and it was decided that they could, and reliance was had upon some of the principal cases to which I have called attention, and also Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20.

In Matter of Tompkins, 154 N. Y. 634, 49 N. E. 135, there was a life estate and remainders, with a substitutional clause. The court said:

"While these words were treated by the Appellate Division as a gift by substitution in case of the death of the first legatee or devisee, they were held to refer to a death during the continuation of the trust. We think these words refer to a death in the lifetime of the testator, and such a construction removes many of the difficulties in carrying out the obvious intention of the testator. At the testator's death the remainders vested in Marion and Jotham absolutely, subject to the execution of the trust. Livingston v. Greene,

52 N. Y. 119; Embury v. Sheldon, 68 N. Y. 227; Nelson v. Russell, 135 N. Y. 137 [31 N. E. 1008]; Stokes v. Weston, 142 N. Y. 433 [37 N. E. 515]."

Note the terms of the will. It gave the house and lot to executors in trust during the lives of the widow and son to distribute in equal parts the rents, to the widow, son, and daughter "or the lawful issue or descendants of my said son or my said daughter, if either should die before my said wife, such descendant receiving the share of their parent"; and, at the decease of wife and son, "to deliver up my said two children or their descendants the said house and lot which is then to belong to them in fee."

In Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20, there was a gift to the wife for life, "then to such of my children as may then be alive, share and share alike." It was decided that the children took a remainder vesting at the death of the testator. It is said:

"The word 'then' must be understood to refer to some precedent event, and the only event to which it can refer, according to the language employed, is the death of the testator."

I have now traced the decisions in the Court of Appeals to the year 1901, and will briefly refer to some decisions of the Supreme Court, and in some instances affirmed in the Court of Appeals, where the rule was applied.

In Hopkins v. Hopkins, 1 Hun, 352, there was a gift to two daughters for their lives if they remained unmarried, or for the life of the one that should remain unmarried, and, in the event of their death or marriage, "I give  *  *  *  remainder of my estate, to my children," naming them, "or to the survivor or survivors of them. In case any of my children die, having issue, then I will and direct that the child or children of such son or daughter of mine, shall receive the same as the parent of such grandchild would have received if living—that is, the portion that would have belonged to the parent, if living." It was decided that the provision for the issue of such as might die related to the share of such child as might not be living at the time of the death of the testatrix.

In Weed v. Aldrich, 2 Hun, 531, there was a devise to the wife, "and at and after her decease, it is my will that all my estate, either real or personal, be equally divided between my two children, and to the survivor or survivors, share and share alike,  *  *  *  and to their heirs then surviving." It was decided that the words "of survivorship" refer to the death of the testator, and it was said:

"The case of Moore v. Lyons received a very careful examination, and many decisions are cited, fully sustaining the conclusion there declared; and the rule has been repeatedly recognized and followed since."

In Davidson v. Jones, 112 App. Div. 254, 98 N. Y. Supp. 265, the devise was to the wife "for her sole and separate use for and during the term of her natural life, and on her decease to my children or to their legal representatives." It was decided that the words "legal representatives" refer to the heirs of deceased children, and the will was construed as a devise to the wife for life, and on her decease to the testator's children "or to their heirs." There was reference to decisions, and among them were Moore v. Lyons; Livingston v. Greene;

Embury v. Sheldon; Matter of Mahan; Nelson v. Russell; Stokes v. Weston; Matter of Brown, 154 N. Y. 313, 48 N. E. 537; Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20; Matter of Russell, 168 N. Y. 169, 61 N. E. 166. It was also said:

"We have been led to this lengthy discussion of the authorities because it is asserted, erroneously, as we think, that Lyons v. Ostrander, 167 N. Y. 135 [60 N. E. 334], is an authority compelling the interpretation of the will under consideration, as giving to the children of the testator, not an absolutely vested remainder, but one subject to be divested by the death of any one of them during the lifetime of the widow. An examination of that case will show that the court felt constrained, from the peculiar language used by the testator, to hold that he intended to and did fix a particular time when the remainder should vest. It is not to be presumed that the Court of Appeals by this decision intended to overrule the long line of its own decisions to which we have adverted, giving practical construction to wills, in many of which are found expressions which might be said to point to an intent on the part of the testator to postpone the vesting of the remainder created by him with much more precision than any language which can be found in the will at bar."

In Runyon v. Grubb, 119 App. Div. 17, 103 N. Y. Supp. 949, affirmed 192 N. Y. 586, 85 N. E. 1115, without opinion, there was a devise to the testator's widow during her life or widowhood, and in case of either happening that the estate "be divided equally, share and share alike, between my surviving children, and if any one or more of them shall have died leaving legitimate issue, such issue shall have and take the share its parent would have received if still alive." It was decided that survival did not refer to the death of the widow, but to that of the testator.

In Trowbridge v. Coss, 126 App. Div. 679, 110 N. Y. Supp. 1108, affirmed without opinion and without dissent 195 N. Y. 596, 89 N. E. 1114, the gift was to the executor in trust for his intended wife and daughter, and for the division equally of the income between the wife and his children, and a provision that the children of any deceased child should take the share of the parent, and that, on the death of his intended wife and daughter, the property should go to his children, share and share alike, the children of any deceased child to take the share of the parent. It was decided that each of the testator's children took on his death a vested remainder, although he may have died before the wife and daughter.

In Ackerman v. Ackerman, 63 App. Div. 370, 71 N. Y. Supp. 780, there was a gift to the widow for life, and upon her death to the testator's three children, named, "to be divided between them share and share alike, the share of such of my children as may be deceased to be divided equally among his or her heirs if any there be, the share of such child or children to be held in trust and placed at interest on good security until said heir or heirs have attained their majority, but in case there should be no such heir or heirs, or such heirs should be deceased before they have attained their majority, then and in that case the share of such heir or heirs shall be equally divided among my surviving children." One child died before the widow. It was decided that his share vested upon his father's death, and that the possible event of the death of the children refers to the time of the testator's death and not that of the wife. Hirschberg, J., not only reaches

the conclusion by careful exposition of the testator's intention, but by reference to the general rule, for which he refers to Stokes v. Weston, 142 N. Y. 433–437, 37 N. E. 515.

I will now consider decisions tending to impair the rule adopted by the primary authorities.

It would confuse the present question to discuss decisions not involving a life estate, unless some disapproval of the primary cases is mentioned. For instance, in Buel v. Southwick, 70 N. Y. 581, and Nellis v. Nellis, 99 N. Y. 505, 3 N. E. 59, the rule of the primary authorities was not applied. In the first case there were gifts to named children, with limitation to the survivors in case a first taker died without issue, with a substitutional gift to his descendants. A child died without issue. The fee passed to the survivors. In the second case there was a devise to grandsons, with limitation to the survivor, if one died without issue, or, upon the survivor's death without issue, over to the grandchildren. The gift to the first taker was regarded as a contingent fee. Livingston v. Greene and Embury v. Sheldon were distinguished.

But, lest it should be thought that the court was turning from the primary authorities, I interpolate here Quackenboss v. Kingsland, 102 N. Y. 128, 6 N. E. 121, 55 Am. Rep. 771, where K., after specific devises and bequests, gave the residue of his estate to his son Daniel "and to his heirs; but in case my son Daniel should die without lawful issue, I give and bequeath it to my remaining children, share and share alike." It was decided that the reference was to the death of Daniel before the testator. The opinion states:

"This conclusion is required by the decisions of the courts in many similar cases. Embury v. Sheldon, 68 N. Y. 227; Livingston v. Greene, 52 N. Y. 118."

Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247, 57 Am. Rep. 701, is similar to Buel v. Southwick and Nellis v. Nellis. There was no life estate, but, as it is cited in cases to be noted, it should be understood, and for emphasis I have italicized some lines in the opinion. The will of V. gave land to his son C., *"subject to the proviso hereinafter contained."* After various legacies payable by C., there was a proviso to the effect that, if C. died without issue, then the estate devised to him should go to four grandchildren of the testator, and, "in case my son Cornelius should die before the provisions of this will become an act, the devisees last named shall perform and fulfill all the conditions required of my son Cornelius to the legatees named." C., surviving the testator, died without issue. It was decided that the words "died without issue" referred to a death at any time, and that Cornelius took a fee, and that the gift over operated in the event only of his death without issue. Judge Andrews said:

"It is said by Mr. Jarman (2 Jarm. 783) to be the general rule that, where the context is silent, words referring to the death of the prior legatee, in *connection with some collateral event*, apply to the contingency happening as well after as before the death of the testator. It will be observed that the rule as stated by the learned author relates to personal property and is deduced from the later English cases upon the *construction of bequests of personality, coupled with a contingency*, which seem to have modified the earlier decisions. But where real estate is devised in terms *denoting an in-*

*tention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case of his death without issue, it has, I think, been uniformly held in England, and it is the rule supported by the preponderance of judicial authority in this country, that the words refer to a death without issue, in the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple*"—

citing cases, and among them Quackenboss v. Kingsland, 102 N. Y. 128, 6 N. E. 121, 55 Am. Rep. 771; Livingston v. Greene, 52 N. Y. 118; Embury v. Sheldon, 68 N. Y. 227. It is necessary, for a fair understanding of the prevailing judicial authority at the time, to read in its entirety the opinion of Judge Andrews. A similar case is Matter of N. Y., L. & W. R. Co., 105 N. Y. 89, 11 N. E. 492, where there was not a life estate related to the question involved. The will gave to a daughter M. all the real and personal property subject to the payment of certain legacies, and that, in the case of the death of M. "without issue," the property should be possessed and enjoyed by the testatrix's husband and sister during their lives, and that after their death it should be divided equally between three brothers named, or their representatives, share and share alike; "the devise over to my husband, sister and brothers to depend upon the contingency of my daughter Minnie dying without issue." The daughter survived the testatrix and took a conditional fee, defeasible by her dying without leaving issue living at the time of her death. Judge Rapallo said:

"It may be regarded as a settled rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that, if such devisee survives the testator, he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator."

But there was a life estate in Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471, decided in 1891, where it is said:

"So when there is a devise to A., and in case of his death without issue or without children, then to B, the weight of authority is that the words refer to a death without issue in the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple. * * * *But this rule has no application when the first devisee or legatee takes a life estate and is applied only when the prior gift is absolute* and unrestricted. The person assigned for the rule is that as death is the certain event, and time only is contingent, the words of contingency can only be satisfied by referring them to a death before some particular period; and, none being mentioned, the time referred to must be presumed to be the testator's own death. Matter of N. Y., L. & W. R. Co., 105 N. Y. 89 [11 N. E. 492]; Vanderzee v. Slingerland, 103 N. Y. 47 [8 N. E. 247, 57 Am. Rep. 701]. But this reason fails in the case of a life estate, as in such case the presumption would be that the words of contingency referred to the event which would determine the life estate. The rule is so stated in Jarman on Wills, vol. 2, p. 759 (5th Ed.)."

I will later call attention to the statement in Jarman, but it is important to note here that, at the date of this opinion (1891), there

had been many cases in the same court fixing a contrary rule of construction, and that reference was not made to one of them. But notice that, as the opinion proceeds, there is some reference to decisions, although not directly on the point in question. Not one of them, save O'Mahoney v. Burdette, L. R. (7 Eng. & Ir. App.) 388, involved a life estate, and in that case the question was, not whether the death of the first taker of the remainder referred to a time before the death of the testator, but whether, if she died at any time unmarried or without children, the legacy went over as an executory devise. As Fowler v. Ingersoll was an abrupt departure from all the earlier decisions in that court, it should be noticed upon what narrow authority it rests, and how completely all other decision was disregarded. Notwithstanding the statement of this new rule, a consideration of the facts of the case upon which dependence was placed could leave no doubt that the intention of the testator required the conclusion reached. The will gives to the husband the use of the testatrix's estate for life, subject to the payment of legacies and annuities to three cousins, and, in the case of the death of either cousin, the annuity is to go to either of the survivors, and, in case of the death of the husband before the testatrix, it was provided that A., one of the cousins and executors, should have the sole supervision and management of certain real estate, to receive to her use a portion of the net income, and to apply the residue in certain fractional shares to cousins, in case of the death of either to the survivors. Upon the death of the cousins it was provided that one-third of the real estate should go to the children of each of her cousins, and that, in case of the death of either without children, the share of that one should go to the children of the survivors. The testatrix survived her husband, and it was decided that the title vested in A. in trust during the lives of the three cousins, and it was said that:

"We find ample evidence in the will before us that the testatrix intended by the tenth clause to refer to a death whenever it occurred, and not to a death before her own."

Then the reasons for so finding are given, and with them there need be no dissent.

In Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762, the will was that the real estate should be deemed converted into personalty; the residuary estate was given to executors to apply the income to the use of testator's surviving children "during the life of each of them severally and upon the death of each . * * * to pay over the capital of the share of said child so dying to his or her descendants"; and, in case of the death of a child "without leaving any descendants, then to pay over the capital of such child's share to his or her surviving brothers and sisters." Six children survived the testator; two of them died, one without descendants and the other leaving two children; then a third child died without descendants. It was decided that the share of the child who died last went to the children of the testator, who survived the child so dying, and that the said two grandchildren were not entitled to share therein. The decision is justified

by the whole will, and it will be noticed that the learned judge did not find it necessary to depend on the following statement in his opinion:

"It is only in the case of an absolute devise or bequest to one and in case of his death to another that the words are given such a meaning, and the rule has no application to a case where the first devisee or legatee takes a life estate"—

and there is a reference to Vanderzee v. Slingerland, In the Matter of N. Y., L. & W. R. Co., Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471, and Mead v. Maben, 131 N. Y. 255, 30 N. E. 98, in not one of which was there a life estate, save in Fowler v. Ingersoll, which has been noticed, while in Mead v. Maben the rule stated in the primary cases was recognized but deemed overridden by evidence of contrary intention. It may be observed that between the decision in Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471, and that of Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762, Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008, had been decided, in which the rule laid down in Moore v. Lyons was fully sustained upon the very authority of that case and Livingston v. Greene, and that the rule was followed in Matter of Tienken, 131 N. Y. 391, 30 N. E. 109, where there was a life estate.

In Matter of Denton, 137 N. Y. 428, 33 N. E. 482, after a life estate, the residuary estate was given to four children, with a proviso that:

"In case of the death of either of them, leaving issue *before either of the different parts thereof. * * * can be divided,* then such issue to take the share or part the parent would have been entitled to if living; if without issue, then the survivors to take."

E., a son, died before the life tenant, leaving a wife; his issue had predeceased him. Judge Maynard wrote:

"It is evident from the context that it was not his own death which the testator had in mind when he made the survivorship of the residuary legatee a condition, which must be shown to exist before he can be admitted to share in the distribution of the fund."

The conclusion is so very evident that it was not necessary to say that the rule referring the death to the lifetime of the testator does not extend to a case where a life estate intervenes, for which are cited the cases I have discussed.

Lest it should be inferred that the statement so unnecessarily made in Matter of Denton represented a settled rule of construction, I introduce the later expression in Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11, where the testator gave to the wife the use of two dwelling houses during her life, and provided that:

"In case of the sale of either or both with her consent the income of the proceeds shall be paid to her."

He then devised said dwelling houses to two children, subject to the life occupancy of their mother, and also devised to them all his other real estate subject to her dower right. Later it was provided that, in case of the death of both of the children without issue, the property devised to them "and their issue" should not pass to the branches of his own or his wife's family, but is given to a beneficiary named. It was decided that the death without issue meant a death in the lifetime

of the testator; and, as the two children named survived, they took an absolute fee subject to the life estate.  Judge Finch, after referring to Judge Andrews' opinion in Vanderzee v. Slingerland, continues:

"And the doctrine has been repeated as recently as Washbon v. Cope, 144 N. Y. 297 [39 N. E. 388]. *While such is the general rule*, it is said to maintain its hold somewhat weakly and with a doubtful grasp, and to yield easily to any fact or circumstance indicating a different intention.  Although that is undoubtedly true, it takes on some modification by force of another rule, equally well settled, that where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning."

In Matter of Baer, 147 N. Y. 348, 41 N. E. 702, the will devised property in trust for use of a daughter E., and at her death to her issue, and, in case of her death without issue, the trustees were directed to apply the rents and profits to the support of her sister M. during her life, and at her death to convey the remainder "to the children and lawful heirs of my brother  *  *  *  deceased, to share and share alike per stirpes."  E. died intestate and without issue.  Thereafter M. died.  Ten children of H., the brother, survived the testator, but all died before E.; some of the children leaving wills under which any interest in the real estate vested in them upon the testator's death would pass.  It was decided that the devise to the children of the brother was contingent upon the death of E. without issue, and did not vest at the death of the testator in the then living children of his brother H., but was postponed until the death of M., and that it then vested in the lawful heirs of H., then living.  The question was whether the remainder vested upon the death of the testatrix in such of the children or descendants of her brother H. as were then living, or only in such descendants living at the termination of the life estate; that is, upon the death of M.  There was little difficulty in reaching the conclusion. But Judge O'Brien did say:

"The rule that in case of a devise to one person in fee, but in case of his death to another, the death referred to will be construed to be a death in the testator's lifetime has no application to this case.  The rule is never permitted to operate in a case where, as here, a point of time for distribution is mentioned other than the death of the testator, or where a life estate intervenes, or where the context of the will contains language indicating a contrary intent.  In re Denton, 137 N. Y. 428 [33 N. E. 482]; Washbon v. Cope, 144 N. Y. 297 [39 N. E. 388]; Benson v. Corbin, 145 N. Y. 351 [40 N. E. 11]; Stokes v. Weston, 142 N. Y. 433 [37 N. E. 515]; Vanderzee v. Slingerland, 103 N. Y. 47 [8 N. E. 247, 57 Am. Rep. 701]; Mullarky v. Sullivan, 136 N. Y. 227 [32 N. E. 762]; Fowler v. Ingersoll, 127 N. Y. 472 [28 N. E. 471]."

In three cases cited there are similar words of reference to intermediate life estates, which have been considered; in four cases cited the opposite rule is stated, and in three of them applied.  In Matter of Farmers' L. & T. Co., 189 N. Y. 202, 82 N. E. 181, there was a gift in trust for a person for life, and after her death the fund was to be paid to C., and in the event of his death "without leaving issue after the demise of said life beneficiary, the fund to go to a grandniece upon the death of the life beneficiary."  It was decided that the fund vested absolutely in C, if living at the time of the death of the life

beneficiary; that otherwise it went to the niece. Haight, J., by careful discussion, reached that conclusion. But he did say:

"But, where the disposition of the property which is devised over in case of death is preceded by a prior estate for life or years, then the general rule is that the time of death refers to that which occurs during the period of the intervening estate. Fowler v. Ingersoll, 127 N. Y. 472 [28 N. E. 471]; Lyons v. Ostrander, 167 N. Y. 135, 140 [60 N. E. 334]."

I have already considered the first case cited, and shall have occasion to do so again, and reserve the second for later discussion. Meantime, I complete, so far as I may, reference to the decisions construed not to limit the death to the lifetime of the testator. Teed v. Morton, 60 N. Y. 502, where the will provided for distribution of money to a class after death of the life tenant. Flanagan v. Staples, 28 App. Div. 319, 51 N. Y. Supp. 10, where, upon the death of the wife, all the estate was given to the children, and, in the event of the death of any of them leaving issue, the issue should take the share "which the parent would have taken if living." Weymann v. Weymann, 82 App. Div. 342, 81 N. Y. Supp. 959, where, without other discussion of intention, Lyons v. Ostrander is cited and followed. Hebberd v. Lese, 107 App. Div. 425, 95 N. Y. Supp. 333, where, after a gift for support by use of proceeds of sale to a daughter for life, then "to her children and issue," should she leave any, or, if not, to a church, with direction that at the daughter's death the residue should be given to and divided among her children with substitutional provision. Schwartz v. Rehfuss, 129 App. Div. 630, 114 N. Y. Supp. 92, affirmed 198 N. Y. 585, 92 N. E. 1101, where, after a life estate to the widow, there was a gift at her death to named children, and, in case of death of any of them, direction that its share "shall descend to and vest in his or her issue," or, in default of such issue, in the surviving brother or sisters. Ranhofer v. Hall Realty Co., 143 App. Div. 237, 128 N. Y. Supp. 230, where there was a life estate to the widow during widowhood, and after death, or "from and upon the date of her said decease or remarriage," gift to his children "and to the descendants of any of them then * * * in the proportion of the share of each child to his or her descendants, share and share alike," or, in default of descendants to testator's surviving children. It is said, "To the same effect is Lyons v. Ostrander, 167 N. Y. 135 [60 N. E. 334]." Weinstein v. Kratenstein, 150 App. Div. 789, 135 N. Y. Supp. 334, where, after a life estate, there was a gift to children "then living, or to their heirs," and Lyons v. Ostrander is cited. Camp v. Cronkright, 59 Hun, 488, 13 N. Y. Supp. 307, where after a life estate to the widow and "upon her death then I give" to my children with a substitutional clause for the children of any deceased child. But it is said, "And the rule that, in ordinary cases where death is referred to, it means death during the lifetime of the testator cannot apply," because of the intention to have the limitation extend down to the period of the death of the life tenant.

I consider, finally, Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334, not for the purpose of disputing its authority, but to refer to the state of the law at the time, the injustice of applying it to the will of the date now in question, as the testator or his advisers must have intended to

use the words according to the interpretation then long given them. W. devised land to executors in trust to pay net rents to adopted son Jacob Weeks Cornwell during his life, and "upon his death I give, * * * to Virginia Cornwell," wife of the life beneficiary, "Ida Van Cott, Clarissa Lyons and Millard Fillmore Cornwell, children of said Jacob Weeks Cornwell, share and share alike, the issue of such as may have died to take the share to which his, her or their parents would, if living, have been entitled." Without resorting for aid in interpretation to other parts of the will, it was decided that the substitutional clause took effect in case of the death of any named devisee before the termination of the trust. Such a decision, based on similar words, had not, so far as I discover, been discussed in extenso by that court in any earlier case. But the opinion exhibits the usual clarity of expression of the learned judge who wrote, and is unmistakable in its application to the particular provision in question. The opinion states:

"The context itself clearly indicates that the preceding words, 'upon his death,' refers, not to the death of the testator, but to the death of the life beneficiary."

But in such discussion not one of the decisions stating or approving a different rule, which I have presented, was mentioned. The only cases in the Court of Appeals cited are Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471; Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762; Matter of Denton, 137 N. Y. 428, 33 N. E. 482; Matter of Baer, 147 N. Y. 348, 41 N. E. 702.

I have already shown that in Fowler v. Ingersoll no American case is cited asserting the rule, or a single case in this country that even involved a life estate; that in Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762, no case stating such a rule is cited, save Fowler v. Ingersoll; that in Matter of Denton, 137 N. Y. 433, 33 N. E. 482, no new authority was cited; and that in Matter of Baer, 147 N. Y. 348, 41 N. E. 702, there were cited Fowler v. Ingersoll, Mullarky v. Sullivan, and six other cases, four of which hold or apply a contrary rule. Moreover, in the four cases cited in Lyons v. Ostrander, there was found evidence of intention, independent of any rule.

In Lyons v. Ostrander, supra, also, there is a reference to several early English cases below noted, and to Jarman, vol. 2, p. 696 (6th Ed.), where the reliance is chiefly upon Burrell v. Baskerfield, infra, and Salisbury v. Petty, infra.

Burrell v. Baskerfield, 11 Beavan, 525, was decided in 1849 by the Master of the Rolls, who said:

"I confess I have no overweening confidence that the decision to which I find it my duty to come is clearly the right one"—

and, after a careful examination of the will, he came to his conclusion "in the midst of a great deal of uncertainty."

Girdlestone v. Doe, 2 Simons' English Chancery Reports, 226, was decided in 1828 by the Vice Chancellor in the following opinion:

"It appears to me that 'or' must be construed disjunctively here, as the context requires it; and that the testator contemplated that his nephew might not be alive at the death of Mary Tattershall; and therefore I think that the nephew did not take an absolute interest in the annuity."

Salisbury v. Petty, 3 Hare's Rep. 86, was decided in 1843 by the Vice Chancellor. There was a gift to A. for life, subject to payments of £2,000 apiece to B., C., D., or to their respective lawful issue, remainder to A.'s children as he should appoint, charged with the further sum of £3,000 to B., C., and D. or their respective lawful issue. B., C., and D. survived the testator; B. died without issue in the lifetime of A.; and it was decided that B. took both legacies absolutely, and that the children of C. and D., who died before A., took by substitution. The decision favors the rule for which it is cited. Like the other English cases cited, it involved personal property.

Hervey v. M'Laughlin, 1 Price's Rep. 264, decided in 1815 in the Court of Exchequer, is similar in decision.

Price v. Lockley, 6 Beavan, 180, was decided in 1843 by the Master of the Rolls, who was stated to be of opinion that, in the event which had happened, the children of Joseph took one-fourth by way of substitution. After a life estate there was a gift to "four children, the survivor or survivors of them, equally share and share alike, or .o their heirs lawfully begotten." Joseph died before the life tenant and after the testator.

Giving these foreign cases such authority as the dignity of the courts deciding them demands, the question arises: Should they be allowed to override a contrary rule, at the time of the events in question established in a long line of decisions in the highest court of this state? But it may be answered that some of the primary authorities do not involve the substitutional clause present in Lyons v. Ostrander. Most of them do. A few do not, like Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515, where the substitution was to grandchildren in case of the death of a son without issue. Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11, was similar. So in Matter of Accounts of Mahan, 98 N. Y. 372, the remainder depended upon survivorship. But, lest it should be suggested that such cases are not authorities on the present question, it should be noted that three of the four cases in the Court of Appeals cited in Lyons v. Ostrander did not contain the clause in question. In the very leading case where this new rule was first recited in the Court of Appeals, Fowler v. Ingersoll, the remainder went to survivors if the first taker died without children. So it was in Mullarky v. Sullivan and Matter of Baer. So that, of the four American cases upon which Lyons v. Ostrander rests, Matter of Denton alone has a similar substitutionary clause. In Lyons v. Ostrander, supra, it is said:

"This is not the case of a devise in trust to A. for life, with remainder to B., or, in case of his death without issue, then to some one else."

If it was the intention to suggest that the rule would be different in such case, two authorities relied upon for the new rule are eliminated.

The opinion in Lyons v. Ostrander quotes from Underhill on Wills, § 346, that, in a case where there is a precedent life estate, "three periods (the lifetime of the testator, the life of the prior devisee, and the period thereafter) are open to selection." But the selection of the period depends upon the testator's intention, and I repeat that at the time the present will was made, and when the deeds under it passed, the rule undoubtedly was that, in the absence of other intention gath-

ered from the entire will, the substitutional clause referred to a period before the death of the testator. Hence the children took an estate absolutely vested.

The judgment should be reversed, and the complaint dismissed, with costs.

JENKS, P. J., and RICH, STAPLETON, and PUTNAM, JJ., concur upon the ground, however, that the will as a whole shows the intention to vest in the children at the death of the testator an absolute fee, and that the substitutional clause refers to death at some time before that of the testator.

