In the Matter of the Judicial Settlement of the Accounts of
  LILLIAN DEPUY, as Substituted Trustee under the Will of
  TEN EYCK DEPUY, Deceased.

LILLIAN DEPUY, Appellant, Respondent; ASHER P. WHIPPLE,
  as Special Guardian, etc., and FREDERIC C. DEPUY,
  Respondents, Appellants.

Fourth Department, December 22, 1920.

Wills — testamentary trust — remainder to son or to his descend-
  ants on termination of trust — death of son before termination
  of trust — assignment by son of vested interest — children sub-
  stituted on death of son — residuary clause establishing separate
  trust.

The testator provided in his will for a trust for the benefit of a son, Clarence,
  for life and after his death or in case he should die before the testator for
  the benefit of the son's widow, and then provided, so far as concerns the
  instant case, that if said son should have no other issue than a grandson
  Fred, " and at the death or remarriage of my said son's widow, or at his
  death, in case he leave no widow him surviving, * * *; If at such
  time my said grandson Fred shall have no children .or descendants of
  children they shall pay to my said grandson the sum of ten thousand
  ($10,000.00) dollars, [out of the principal of the fund] and the balance to
  my said son Charles, or to his descendants." After the death of the
  testator, but before the will was probated, the son Charles assigned his
  interest to the said grandson.   Clarence's wife died after the testator;
  later the son Charles died leaving two children and then Clarence died
  without other issue than the grandson mentioned.
Held, that the testator's son Charles acquired a vested remainder in those
  parts of the trust funds which were substantially represented by personal
  property not going to the grandson, by virtue of section 40 of the Real
  Property Law which is made applicable to personal property by section
  11 of the Personal Property Law.
On the death of Charles preceding the death of Clarence the children of
  Charles acquired by substitution the remainder vested in him.
The vested remainder passing to the son Charles was divested on his death,
  there being no living descendant of Clarence except the grandson, and,
  therefore, the grandson took nothing by the assignment.
The residuary estate was left in trust to apply one share " for the benefit of
  my said son Clarence during his life, and when they shall severally decease
  to pay over the principal sums of their respective shares, as in the case of
  the principal sums hereinbefore bequeathed for their use and benefit."
  Held, that this provision constituted a separate trust and that the said
  grandson was entitled to $10,000 out of each fund.

The said grandson was not entitled to such proportion out of the stocks representing the fund as $10,000 bears to $30,000 and as $10,000 bears to $25,044.93, the two sums representing the agreed value of the stocks, but he is entitled to the specific sums only.

CROSS-APPEALS by Lillian DePuy, as substituted trustee, and Asher P. Whipple, as special guardian, and another, from parts of a decree of the Surrogate's Court of the county of Monroe, entered in the office of said Surrogate's Court on the 19th day of May, 1919, judicially settling the account of the proceedings of said trustee.

*Walter S. Hubbell* [*Hubbell, Taylor, Goodwin & Moser*, attorneys], for the appellant, respondent, Lillian DePuy, trustee, etc.

*Asher P. Whipple*, special guardian for the infants Louise DePuy and Charles T. DePuy, Jr.

*Joseph R. Webster* [*Webster, Meade & Straus*, attorneys], for the respondent, appellant, Frederic C. DePuy.

DEANGELIS, J.:

The questions raised by these appeals require us primarily to construe section 8 and subdivision 4 of section 12 of the will of Ten Eyck DePuy.

The following is a copy of section 8:

" Section Eight. I give and bequeath to my said executors, the principal sum of thirty thousand ($30,000.00) dollars, in trust, nevertheless, for the following uses and purposes, viz.:

" (1) They shall invest the same and keep it invested, as far as possible, in interest bearing securities.

" (2) They shall pay over the income thereof to my son Clarence DePuy during the period of his natural life.

" (3) After his death, or in case he should not survive me, they shall pay the income thereof to his widow, if any, so long as she remains his widow.

" (4) At her death or remarriage, or in case my said son leave no widow him surviving, then at his death they shall pay and distribute the said principal sum of thirty thousand dollars as follows:

" (a) If my said son Clarence shall have other issue than **my**

grandson, Fred, and there shall survive at the death of my said son, or at the death or remarriage of his widow, in case he leave a widow him surviving, two or more children, or the descendants of two or more children, or one or more children and the descendants of one or more children, then they shall pay such principal sum to such children share and share alike, the descendants of a deceased child to take the share of its parent;

" (b) If my said son Clarence shall have no other issue than my said grandson Fred, and at the death or remarriage of my said son's widow, or at his death, in case he leave no widow him surviving, my said grandson shall have children or descendants of children, then my said executors shall pay to my said grandson ten thousand ($10,000.00) dollars and the balance to his children or their descendants;

" (c) If at such time my said grandson Fred shall have no children or descendants of children they shall pay to my said grandson the sum of ten thousand ($10,000.00) dollars, and the balance to my said son Charles, or to his descendants;

" (d) And if at such time my said grandson Fred shall not be living, and shall leave no descendants him surviving, then my said executors shall pay the said sum of thirty thousand ($30,000.00) dollars, with all arrearage of interest, if any, to my said son Charles, or his descendants.

" In case it shall appear to my said executors that the payment of the whole income from the said thirty thousand ($30,000.00) dollars to my said son Clarence, as above provided during his life, would not be for the best interests of himself or family, then in that event, I direct them to withhold from him so much thereof as they shall deem meet, and in their discretion pay over the same to his wife, or use it for the benefit of himself or his family, or allow it to accumulate and be added to and disposed of with the said principal sum as aforesaid, and as in this section provided."

The following is a copy of subdivision 4 of section 12:

" (4) In case there shall be any residue remaining, I hereby give and bequeath the same to said executors in trust for the following purposes: To divide the same into three equal shares, and to pay one share to my said son Charles, and to use and apply one share for the benefit of my said daughter Ada during her life, and one share for the benefit of my said son Clar-

ence during his life, and when they shall severally decease to pay over the principal sums of their respective shares, as in the case of the principal sums hereinbefore bequeathed for their use and benefit."

The provisions quoted were contained in the original will which was dated March 30, 1893. The first codicil thereto was dated March 26, 1898, and the second codicil was dated July 18, 1900.

The testator died August 5, 1904, leaving him surviving as his only heirs at law and next of kin his son Charles T. DePuy, his daughter Ada B. Elston (the wife of Harry K. Elston) and his son Clarence DePuy. The testator's wife died before his death. His son Charles married February 8, 1899, and died March 19, 1916, leaving him surviving his wife, Lillian DePuy, and, as his only heirs at law and next of kin, his daughter Louise, who was born April 3, 1900, and his son Charles T., Jr., who was born December 23, 1901. The wife of the testator's son Clarence died August 14, 1910. The testator's son Clarence died June 22, 1918, leaving him surviving as his only heir at law and next of kin Frederic C. DePuy, who was born May 11, 1881.

The testator provided a trust fund of $75,000, the income of which he gave to his wife for life, which bequest lapsed because of her death before his. He gave $40,000 to his son Charles and $10,000 to his daughter Ada. He provided a trust fund of $30,000, the income of which he gave to his daughter during her life, and a like trust fund of $30,000 for the benefit of his son Clarence during his life, which latter fund is involved in this litigation. He also provided for the disposition of his residuary estate by giving $40,000 thereof to his son Charles and dividing the remainder into three parts, one of which he gave to his son Charles, and with one of the other parts he provided a trust fund for the use of his daughter during her life, and with the other part provided a trust fund for the use of his son Clarence during his life, which latter fund is also involved in this litigation. In his second codicil he revoked the bequest of $40,000 from his residuary estate to his son Charles.

The original will and codicils were probated November 9, 1904. On the 24th day of October, 1904, and, therefore,

between the date of the testator's death and the probate of his will, his son Charles by an instrument in writing assigned his interest in the trust funds for the benefit of Clarence during his life to Clarence's son Frederic.

The testator appointed his wife, Sarah E. DePuy, and his son Charles T. DePuy executors of his will and made them, as such executors, trustees of the trusts therein provided for. His wife having died before his death, his son Charles became the sole executor of and, as such, trustee under his will. After the death of his son Charles, Charles' widow, Lillian DePuy, was duly appointed substituted trustee in his place, by a decree of the Surrogate's Court made on the 20th day of June, 1916.

(1) Frederic DePuy as such assignee claims that the will shows that it was the intention of the testator to vest his son Charles with the absolute title to so much of the trust funds in question as does not otherwise belong to Frederic and that the substitutional clause " or to his descendants " following the bequest of the remainder to Charles refers to the death of Clarence and the death of his wife or if she survived him to her remarriage, at some time before the death of the testator. The infants Louise DePuy and Charles T. DePuy, Jr., through their special guardian, claim that the language employed in the will operated to create a substitutional gift in their favor in the event of the death of their father during the lifetime of Clarence and the lifetime of his wife if she should survive him or until her remarriage. The substituted trustee joins the infants in their claim. The Surrogate's Court has sustained the claim of Frederic.

It seems to us plain that the testator's son Charles acquired a vested remainder in those parts of the trust funds not going concededly to Frederic DePuy, under section 40 of the Real Property Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52; derived from former Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 30; digested from R. S. pt. 2, chap. 1, tit. 2 [1 R. S. 723], § 13).

It appears that the trust funds are substantially represented by personal property, that is, certain shares of the capital stock of certain local industrial corporations, held by the testator at the time of his death, so that we should be reminded that the provisions of the Real Property Law referred to in the foregoing

are made applicable to personal property, under section 11 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45; derived from former Pers. Prop. Law [Gen. Laws, chap. 47; Laws of 1897, chap. 417], § 2; digested from R. S. pt. 2, chap. 4, tit. 4 [1 R. S. 773], §§ 1, 2.)

We are of the opinion that Charles' vested remainder was liable to be divested by the termination of the life estates of Clarence and his wife if at that time there should be any living descendants of Clarence other than Frederic, or in case at such time there should be no living descendant of Clarence but Frederic and Charles should be dead. This last · condition arose, and, therefore, the remainder passed to Charles' descendants, Louise and Charles T. DePuy, Jr., by substitution. In other words, Charles and his descendants acquired the remainder to take effect in the alternative, that is to say, if Charles should die before the determination of the life estates, his descendants would be substituted for him. (Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 51; derived from former Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 41; digested from R. S. pt. 2, chap. 1, tit. 2 [1 R. S. 724], § 25.)

It seems to us that the rule that must control these conflicting claims is that stated by WERNER, J., in *Lyons* v. *Ostrander* (167 N. Y. 135, 138), where he said: "The learned trial court based its decision upon the general and well-settled rule that when there is a devise or bequest to one person and in case of his death to another the words of substitution refer to a death in the lifetime of the testator. Many decisions are cited which exemplify this rule. There is, however, a qualification, or, more properly speaking, an addition to this rule which is equally well established, and this seems to have been overlooked by the learned trial justice. It has been announced in various forms by legal and judicial writers. It is concisely stated by Jarman (Vol. 2, p. 696, 6th ed.) as follows: *A bequest to A for life, and after his decease to B or his children, is held to create a substitutional gift in favor of the children of B in the event of B dying in the lifetime of A.*" (The italics are ours.)

The same rule was laid down by the Court of Appeals in *Marsh* v. *Consumers Park Brewing Co.* (220 N. Y. 205).

APP. DIV.—VOL. CXCIV.     51

We think that we need not go beyond these two cases to support our position and that it would not be profitable to undertake to array the many authorities pro and con referred to in the briefs of the counsel and contained in the books. In passing, however, we may call attention to the exhaustive review of the authorities contained in the learned opinion of THOMAS, J., in the *Marsh Case* (162 App. Div. 256), whose conclusion was disagreed with by the Court of Appeals.

(2) It appears, as already stated, that the *corpus* of the trust fund is represented substantially by shares of stock in certain local industrial corporations and that said stocks are so held pursuant to two agreements entered into by and between the parties in interest, except the infants, with the approval of the Surrogate's Court, and that these stocks have been held together, as a matter of convenience, because the income therefrom went to Clarence DePuy. It further appears that the parties have agreed that the value of the *corpus* of the trust funds is $55,044.93, $30,000 representing the fund under the 8th section of the will and $25,044.93 representing the fund under subdivision 4 of the 12th section of the will. Frederic DePuy claims and the Surrogate's Court has found that there are two distinct trust funds, one provided for by the 8th section and the other provided for by the 4th subdivision of the 12th section of the will and that Frederic DePuy is entitled to $10,000 from each trust fund with interest thereon from the 22d day of June, 1918, the date of the death of his father, the surviving life tenant. On the other hand, the infants and the trustee claim that it is all one trust fund and that only $10,000 and interest should be paid to him. It must be remembered that these payments to Frederic are to be made from the *corpus* of the trust funds that were created for the benefit of his father. We are inclined to the view that the language of subdivision 4 of the 12th section of the will is broad enough to sustain the ruling of the Surrogate's Court upon this question. We, therefore, adopt that ruling, although it was simply academic, because the decree of the Surrogate's Court awarded both trust funds to Frederic DePuy.

(3) Frederic DePuy further claims that he should receive of the stocks representing the *corpus* of the two trust funds

such proportions as $10,000 bears to $30,000 and $10,000 bears to $25,044.93, with the income that has accrued therefrom since the death of his father. The Surrogate's Court has decided against this claim and we think that its decision is correct, although the decision was academic for the reason already stated. The *corpus* of each of these funds from which $10,000 was to be paid to Frederic might have decreased in the course of the administration of the trusts, and the fund from the residuary estate might not have exceeded $10,000, affording the reason why the testator provided that Frederic should have the $10,000 from the *corpus* of each fund, even if that should exhaust the fund. Now that the funds have been well administered and will produce more than the amounts originally set apart, it seems reasonable that Frederic should be confined to the particular sums so carefully bequeathed to him by the testator.

It follows from the foregoing that the decree must be reversed in the respects indicated and the matter remitted to the Surrogate's Court to be acted upon in accordance with the views which we have expressed.

All concur.

Decree modified in accordance with the opinion, and matter remitted to the Surrogate's Court to be proceeded upon in accordance with the opinion, with costs of this appeal to abide the final award of costs.