IN RE ESTATE OF HORACE CHRISTIAN DALE.
GEORGE SATTERFIELD DALE, APPELLANT, V. HORACE ALBERT DALE, EXECUTOR, ET AL., APPELLEES.
298 N. W. 414

FILED MAY 29, 1941. No. 31034.

*E. D. Crites* and *F. A. Crites*, for appellant.

*A. C. Plantz, Frank F. Aplan, John J. Olsson* and *R. O. Reddish, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ., and POLK, District Judge.

ROSE, J.

This is a controversy over distribution of the estate of Horace Christian Dale who died January 9, 1929, leaving as his only heirs his four adult sons, George Satterfield Dale, Everett Edwin Dale, James Leland Dale and Horace Albert Dale. The father of these four sons made a will May 25, 1926, in which he named Everett Edwin Dale and Horace Albert Dale executors and directed the disposition of his estate as follows:

"After all my lawful debts are paid, I bequeath and give to my executors, to hold in trust, all of my estate, both real and personal, to invest to the best possible advantage and order them to pay the income therefrom to my wife Lillian Elizabeth Dale so long as she may live. At the death of my wife it is my wish that the residue of my estate be equally divided between my four sons, George Satterfield Dale, *Edward Everett* Dale (Everett Edwin Dale), James Leland Dale and Horace Albert Dale, after first adjusting between them the amounts I have loaned to them for business purposes, with interest at four per cent. per annum, and the amounts I advanced for their college education, so that, including said amounts so advanced, each will have received one-fourth of my estate. The amounts so advanced will be found in my private records, which shall govern said adjustment."

Testator's wife, mother of the four adult sons, died before her husband. The will was probated in the county court of Sheridan county February 9, 1929, and on that date letters testamentary were issued to the two executors named in the will. They qualified and proceeded to settle testator's estate. There was no objection to the will and no appeal from the decree probating it. The estate consisted

of both real estate and personal property. The principal asset or source of income was a controlling interest in the Stockmen's National Bank of Rushville. To retain control of the bank, to make income property and other personalty available for payment of debts, to prevent the filing of claims and to keep as much of the estate as possible together, the four sons met between the date of testator's death, January 9, 1929, and the date on which letters testamentary were issued, February 9, 1929, examined the condition of the estate and devised a method of settlement. Their agreement at that time was supplemented May 16, 1929, by a written instrument in the following form, signed by all of them:

"We, the undersigned, heirs of H. C. Dale, hereby agree in consideration of our mutual promises to each other that the stock of the said H. C. Dale estate shall be handled by us as follows as regards the Stockmen's National Bank stock of Rushville, Nebraska:

"1st. That in case of sale of said stock it shall only be on consent of three of said heirs unless sale is ordered by the probate court to pay debts of the estate and in case of sale the entire holding of the Dale family and of the Dale estate shall be sold as a single unit so as to transfer a controlling interest in the said bank.

"2d. It is further agreed that none of the undersigned shall buy any additional stock of said bank without the consent of the other signers.

"3d. It is also agreed that all earning from stock belonging to the estate, also any funds derived from other assets of the estate, shall go first to pay claims against the estate, then when all claims are paid the revenue to be applied as follows: Whereas the books of the estate show that all of the undersigned are indebted to the estate in various amounts, it is agreed that the one least indebted to the estate shall receive the earnings, after payment of debts, until he has received an amount added to his debt equal to the indebtedness of the one next least indebted to said estate, when the two of them shall divide the revenue until they have received funds sufficient to equalize their total shares with

the third least indebted, and then all three shall divide proceeds till each has received from the estate amounts added to their indebedness equal to the indebtedness of the fourth, after which time they shall share alike."

The two executors joined in an amended final account July 15, 1938. The record of the county court recites:

"That on August 15, 1938, all of the heirs being present and being represented by counsel in county court, all objections to the allowance and approval of the amended final account were withdrawn and the account was approved by the county court with the consent of all heirs and interested parties."

The county court found further that "all debts, claims and demands against said estate have been paid in full and settled, except the costs of administration."

The total assets of the estate, in personal property and in real estate, as shown by the amended final report and as found by the county court were $42,373.51; costs of administration, $1,379.12; balance in hands of the executors for distribution among the four sons, $40,994.39. In ordering distribution the county court disregarded the agreement of the sons and determined the share of each to be as directed by the will. Upon appeal to the district court, distribution was adjudged according to the agreement of the sons. From that judgment George Satterfield Dale appealed to the supreme court and Horace Albert Dale took a cross-appeal. The other sons are appellees.

Appellant and cross-appellant take the position that the will controls the distribution of their father's estate and that the judgment of the district court should be reversed and the judgment of the county court affirmed. The other sons, appellees, insist that the judgment of the district court should be affirmed on the ground that it conforms to the agreement voluntarily made by the four sons of testator. There was no dispute in the evidence on any material issue of fact, but diverse views of the law were discussed at great length on both sides.

Appellant and cross-appellant argue that the will created

a testamentary trust which cannot be destroyed by an agreement at variance with the terms of the bequests. The only beneficiary named in the provision for a trust died before testator. The trust, therefore, lapsed upon the death of the wife, the sole beneficiary, and had no existence when the will was probated. The executors acquired no title to testator's property as trustees. Their possession and control were limited to their powers as executors for the purposes of administration. The title vested in the four sons upon the death of their father. There was no trust to administer. After payment of the debts and the costs and expenses of administration, the rest of testator's estate belonged to the four sons. At the time of their father's death they were adults, capable of making contracts respecting their own property, including that acquired by the will of their father. There was no fraud in the procuring or making of their contract. No one else was injured by it. It did not interfere with any trust. On the undisputed facts the law necessarily is as follows:

"A trust lapses when the sole beneficiary pre-deceases the testator and a gift after the death of the beneficiary vests absolutely at the death of the testator." 69 C. J. 808. See, also, *In re DePuy's Will*, 194 App. Div. 796, 185 N. Y. Supp. 817; *In re Shevlin's Will*, 143 Misc. 213, 256 N. Y. Supp. 513.

In the argument in support of the distribution ordered by the county court in conformity with the will and in disregard of the contract, many cases were cited, among them the Nebraska case announcing the following rule:

"While, as a general rule, a family settlement may provide for disbursement of the estate of testator in a manner at variance with his will, a valid, unexecuted testamentary trust cannot thus be modified or destroyed." *In re Estate of Mowinkel*, 130 Neb. 10, 263 N. W. 488.

The trust upheld in that case was "a valid, unexecuted testamentary trust," the beneficiary still living. The general rule that a family settlement may provide for disbursement in a manner at variance with the will was recognized.

The distribution ordered by the district court in compliance with the agreement of the four sons of testator conforms to the facts and the law and is

AFFIRMED.