New York Life Insurance and Trust Company, as Trustee under the Will of Mary Griffin, Deceased, Respondent, *v.* Teresa Viele and Others, Respondents; Olga Felicitas Heinicke and Others, Appellants.

*Will — a child adopted in Saxony is not within the definition of "living lawful issue."*

A testatrix, then residing in Saxony, made a will giving all her residuary estate to her executors in trust; directing them to apply the net income of one-third of it to the use of her married daughter Emily, a resident of Saxony (then forty years old, and whose two children had then already died), during her life, and after her death to pay the principal "to her then living lawful issue," and that, if she left surviving her no such issue, the same should be added in equal parts to the several shares of the testatrix's ten grandchildren, whom, by a later clause, she carefully enumerated by name. The testatrix further expressly directed that, if her daughter Emily should die before her, the share held for her should go directly to the grandchildren.

Upon the death of Emily, who survived the testatrix, a niece of her husband whom, prior to the execution of the will, Emily had adopted in Saxony, under the Civil Code of that country providing that "the reciprocal legal relationship between an adopted child and the adopting party is the same as that between a child of the marriage and its parents, in so far as it is not otherwise provided in the contract of adoption," claimed a third of the trust estate, as one of the "then living lawful issue" of Emily, entitled thereto, under section 2044 of the Civil Code of Saxony, which enacts that adopted children inherit from the adopting party the same as children of marriage, unless otherwise provided in the contract of adoption.

*Held,* that it was not the intention of the testatrix to include within the words "living lawful issue" of her daughter Emily, the adopted child of Emily and her husband;

That such child derived from section 2044 of the Saxony Civil Code only the right to inherit from its adopted parents and none to inherit from others.

*Semble,* that in the absence of any adjudication of a Saxony tribunal as to the construction of the words "lawful issue" in the Civil Code of that country, the meaning to be given those words should be determined by the court whose duty it is to pass upon the will.

Appeal by the defendants, Olga Felicitas Heinicke and others, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 2d day of April, 1897, upon the report of a referee.

*Chas. E. Hughes*, for the appellant.

*R. E. Robinson*, for the plaintiff, respondent.

*Severyn B. Sharpe*, for respondents Kathlyne K. Viele and others, and guardian *ad litem* for infant defendants Edmee Griffin and others.

*J. Warren Greene*, for defendants Griffin and others, respondents.

INGRAHAM, J.:

The question presented upon this appeal depends upon the construction of the 3d clause of the will of Mary Griffin, who died at Dresden, Saxony, on the 9th day of March, 1888. After making several specific bequests in the 1st clause of the will, by the 2d clause the testatrix gives all the residue of her estate to her executors in trust; and by the 3d clause the executors are directed to invest one-third part of the residuary estate and to apply the net income derived therefrom to the use of her daughter Emily S. Lengnick during her life, and upon her decease the testatrix directed "that the principal of such share be paid over or transferred by my executors to her then living lawful issue, if any, and if she leaves her surviving no such issue I direct that the same be then added in equal parts or proportions to the principal of the several shares of my residuary estate hereinafter directed to be held in trust for my ten grandchildren hereinafter named."

This will was executed August 6, 1878. At that time the testatrix was residing at Dresden, in the Kingdom of Saxony, and had resided there for many years. Her daughter Emily was married to a citizen of Saxony. Mrs. Lengnick had had two children, both of whom had died in 1872, and from the evidence it appears that at the time the will was executed she was in poor health and had given up the hopes of having other children. She was, however, then about forty years of age and was living with her husband at Dresden. The testatrix went to Dresden in the year 1855, and resided there continuously until her death, March 9, 1888. During that period she visited New York but once, sometime prior to 1865, and then remained in America but a few months. The tes-

tatrix's daughter Emily continued to reside at Dresden until her death in 1893, having had no children except the two who had died in the year 1872. It also appears that in the year 1873 Mrs. Lengnick and her husband adopted, under the law of the Kingdom of Saxony, a niece of her husband, who is the appellant, Olga Felicitas Heinicke. She seems to have been legally adopted under the provisions of the Saxony law pursuant to a royal decree dated April 13, 1876, and she lived with the Heinicke family until her marriage in 1891, and she insists upon this appeal that as an adopted daughter of Mrs. Lengnick, she is the "lawful issue" of Mrs. Lengnick, and as such, entitled to the trust estate that was created by the 3d clause of the will. At the time of the execution of the will the testatrix's daughter Emily was then but forty years of age, and it cannot be said that there was no possibility of her having children in the future. There is nothing in the will itself, or in the situation of the parties at the time of the execution of the will, that would justify the court in assuming that this testatrix intended to give to the words "living lawful issue" any other meaning than their primary legal meaning, viz., that of children or their descendants, and nothing from which an inference could be drawn that the testatrix intended to include within the class thus specified any person but the actual offspring of her daughter, or their descendants. It is true that, at the time of the execution of the will, Mrs. Lengnick and her husband had adopted this child, and that by that adoption, under the law of Saxony, the child had acquired a certain legal status, with certain defined legal rights; but such an adoption did not by the law of Saxony give to such adopted child all the rights of a child born of the body of the persons who had adopted her; nor would she be included within the legal definition of the term "lawful issue." The contract of adoption was introduced in evidence, and by it Major Lengnick and his wife take this child Olga Felicitas Lengnick " as their child, with all the rights which, according to section 1787* of the Civil Code of the Kingdom of Saxony, lawfully belong to those who are adopted, where no different provisions are contained in the contract of adoption." By section 1797 of the Saxony Civil Code it is provided that : " The reciprocal legal relationship between an adopted child and the

---

* 1797.— [Rep.

adopting party is the same as that between a child of the marriage
and its parents, in so far as it is not otherwise provided in the con-
tract of adoption." The relationship here provided for is that
between the adopted child and the adopting party; that relationship
is reciprocal. The duty of the adopting party is that of a parent,
and the duty of the adopted child toward the adopting party is
that of a child of a marriage to its parents. This section gives to
the child no right as to others not the adopting parties; and where
the Code speaks of the right of an adopted child to inherit (Sax. Civ.
Code, § 2044) it is provided that "adopted children inherit from the
adopting party the same as children of marriage, unless otherwise
provided in the contract of adoption." Thus, no right is given to
an adopted child by the Code to inherit from others than the parties
who have adopted the child. This limitation would seem to have
important bearing. Thus, persons adopting a child could assume a
relationship to the adopted child, and by their voluntary act such
adopted child acquires a right to inherit their property; but it would
be a much more extensive right to bestow upon an adopted child the
right not only to inherit from the adopting parties property which
belonged to them, but also the right to inherit property belonging
to the family of the adopting parties who had no voice in the adop-
tion of the child, and thus bring in a person to inherit their property
who was not of their blood and in whom it was possible they had
no interest.

The will itself is careful to give to the testatrix's daughter
Emily no power to dispose of this estate. Under the will
she has only the right to receive the income during her life; and
while the testatrix evidently wished that this property should go to
her children, if she left any surviving her, in the event that she left
no child surviving, the property is disposed of in such a way as to
show that the testatrix intended that it should go to her own grand-
children rather than to her daughter Emily's husband, or others not
connected with her own family. At the time the will was executed,
her daughter Emily had adopted this child and the testatrix had
knowledge of that fact. If she had intended that this adopted
child should be entitled to her daughter Emily's share upon Emily's
death, she certainly would not have left it to depend upon an unusual
meaning to be given to the words "lawful issue," but would have

used language expressive of that intention; and this is rendered much more certain by the fact that, when she comes to speak of her own grandchildren in the 4th and 5th clauses of the will, she carefully enumerates them by name so that there could be no mistake as to the individuals whom she intended as the objects of her bounty. The children of her other daughter and her son she expressly names, although at the time her daughter Teresa was alive. When she makes a provision for the issue or children of her daughter Emily she does not specify them by name, but speaks simply of her daughter Emily's dying without leaving living lawful issue; and the reason of that is quite apparent, that is, that her daughter Emily had no living lawful issue at the time of the making of the will whom she could name; and the provision was inserted solely to apply to the contingency of her daughter Emily subsequently having issue. That this was the intention of the testatrix is much strengthened by the 6th clause of the will. She there expressly directs that, if her daughter Emily dies before her, the share held for her shall go directly to her own grandchildren. There is here no reservation for issue, and it can hardly be supposed that the testatrix intended that, if Emily died before her, the adopted daughter should not take, but that if she outlived her the adopted daughter should take.

We have come to the conclusion, therefore, in construing this will, giving to the language used ordinary legal significance, considering all of the other provisions in the will, and the circumstances surrounding the testatrix at the time of the making of the will, that it was not the intention of the testatrix to include within the words "living lawful issue" of her daughter Emily the adopted child of her daughter and her husband.

There was some evidence below as to the law of the Kingdom of Saxony; and a witness who had received a legal education in Saxony, and who had practiced law there, testified that in his opinion the courts of Saxony would include an adopted child within a description of living lawful issue of adopted parents. This will, however, was written in English, was prepared for the testatrix, and related almost exclusively to property within this jurisdiction; and although the deceased may be said to have been domiciled in Saxony at the time of her death, I think we should give the construction to this will

that would be given to a will intended to convey property here, or transfer property here in accordance with our law.

But, assuming that the will is to be construed according to the law of Saxony, and giving due weight to the opinion of the witness who testified as to that law, we think that testimony would have but little weight in determining the construction to be given to the Civil Code of Saxony. The witness expressly testified that so far as he knew the question had never been presented to a Saxony tribunal, nor did he know of any adjudication there that was authority for his construction of the Saxony Code. He bases his opinion solely upon the language used in the Code, and not upon any construction given to the Code by any Saxony authority. When we come to construe a written Code, and where there is no light that can be thrown upon the construction to be given to such Code by the adjudications of the courts of the sovereignty establishing the Code, no evidence that the question presented has ever been discussed or adjudicated upon in such sovereignty, the meaning to be given to the words used is to be determined by the court whose duty it is to pass upon the question. Here, however, we have to construe, not so much the meaning of the Saxony Code, as the intention of this testatrix in making the will in question. Her intention must be ascertained from the words used in the will, considering the circumstances surrounding the testatrix and the objects of her bounty at the time of the making of the will; and in ascertaining that intention it is, we think, immaterial as to what construction the Saxony court would give to the Code. What we have to do is to ascertain what disposition this testatrix intended should be made of this share of her estate after the death of her daughter Emily; and considering all the language used in the will and the surrounding circumstances, we think it is clear that the testatrix did not intend that this share of her estate given to her daughter Emily for life should, upon her death, go to this adopted child rather than to her own grandchildren, for whom she was so particular to make the most explicit direction as to their ultimately becoming the owners of all of her property upon the contingency of her daughter Emily's dying without leaving children. To hold otherwise would result in giving to this adopted child, who was no relation of hers, and upon whom she has not shown any express intention to confer it, a much larger portion of

her estate than is given to any one of her own grandchildren; and we certainly do not think that we would be justified in adopting such a conclusion in the absence of an intention thus declared.

In coming to this conclusion we have not discussed the cases cited by counsel for the appellants in which a construction of the word "issue" has been held to include adopted children. We have examined these cases, but, even if we were disposed to follow them, we do not think any of them apply to this case.

In the case of *Hartwell* v. *Tefft* (34 Law. Rep. Ann. 500), where the Supreme Court of Rhode Island discussed the question, the decision is based upon the statute of that State which gives to an adopted child "the status of a descendant, and all the legal consequences and incidents thereof, the same as though he were born in lawful wedlock;" but here the Code of Saxony does not give to an adopted child such a status. It gives to the child the right to inherit from its adopting parents the same as the child of the marriage, and provides that the reciprocal legal relationship between the adopted child and the adopting party is the same as that between a child of marriage and its parents; but this is quite different from giving to the adopted child the status of a descendant, and all the legal consequences and incidents thereof, the same as though he were born in lawful wedlock. We would say the same of the other cases cited. They all had been put upon the wording of some statute giving to the adopted child the defined legal status that would include the child within the term used in the will or other instrument creating the estate. Here we have to ascertain the intention of this testatrix when she executed this instrument, and not just what relationship existed between the adopted child and its parents.

We think, therefore, that the judgment appealed from was right, and it is affirmed, with costs to the respondents to be paid out of the estate.

VAN BRUNT, P. J., RUMSEY and O'BRIEN, JJ., concurred.

Judgment affirmed, with costs to respondents and executors to be paid out of the estate.