### SCHWARTZ v. REHFUSS.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

1. WILLS (§ 634*)—CONSTRUCTION—CONTINGENT REMAINDER—CONTINGENCY—SURVIVORSHIP.

     Where property was devised to testator's wife for life, and at her death to his children, and, in case any of the children should have died leaving issue, the share of such child to vest in his issue, but if any child died without issue, his share to vest in his surviving brothers and sisters, the intention was that if any of the children died before the life tenant, leaving issue, his share should vest in his issue, and the property vested in the children on testator's death subject to being divested by failure to survive the life tenant.

     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1498; Dec. Dig. § 634.*]

2. REMAINDERS (§ 14*) — CONVEYANCE BY REMAINDERMAN — CONTINGENT REMAINDERS.

     Where the title of remaindermen under a will was subject to be divested by a failure to survive the life tenant, a purchaser from the remaindermen took no greater title than his grantors could convey.

     [Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MORTGAGES (§ 534*)—FORECLOSURE—RIGHTS OF PURCHASER.

    A mortgagee, upon foreclosure and purchase, gets no better title than that held by his mortgagor.

    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1555; Dec. Dig. § 534.*]

    Gaynor and Jenks, JJ., dissenting.

Action by Annie Schwartz against Jacob Rehfuss to compel specific performance of a contract to purchase. Judgment for defendant.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

C. W. Wilson, Jr., for plaintiff.

Hugo Hirsh (Ferd. W. Buermeyer, on the brief), for defendant.

RICH, J. It appears that Herman Dale died on the 8th day of November, 1905, seised in fee of a certain piece or parcel of real property situate in the borough of Brooklyn, New York, leaving a widow, Sophia Dale, and four children, Aldrich J. Dale, Charles H. Dale, Emma V. Leimdorfer, and Elvina F. Diamond, his only heirs at law and next of kin. He left a last will and testament, which has been duly admitted to probate, paragraphs 3 and 4 of which are the only ones material to this controversy, and are as follows:

"Third. All the rest, residue and remainder of my estate, real and personal, and wheresoever situated, I give, devise and bequeath to my wife Sophia Dale for and during her natural life.

"Fourth. At the death of my said wife Sophia Dale, I give, devise and bequeath all my property, real and personal, and wheresoever situated, to my children Emma V. Leimdorfer, Aldrich J. Dale, Elvina F. Dale and Charles H. Dale, share and share alike, to have and to hold the same to them and their heirs and assigns forever, and in case any of my said children shall have died leaving issue, the share of the child so dying shall descend to and vest in his or her issue, and in case of the death of any child without leaving issue his or her share shall descend to and vest in his or her surviving brothers and sisters."

On the 28th day of March, 1907, the widow and the four children conveyed the said premises to Aaron Potruch, who thereafter executed a mortgage thereon to the plaintiff, which was subsequently duly foreclosed and purchased by her upon the foreclosure sale. The plaintiff thereafter entered into a written agreement with the defendant, whereby she agreed to sell, and the defendant agreed to purchase, said premises. At the time fixed for closing the title, the widow, Sophia Dale, was still living, and the defendant refused to take the title tendered and to perform the contract, on the ground that plaintiff did not have a good title to the land contracted to be conveyed, for the reason that, under the fourth clause of the will of Herman Dale, the interest of his children in the real estate was subject to being divested by their deaths prior to that of his wife, Sophia Dale, and that until the happening of the latter event it could not be determined who were the proper parties to convey good title to the premises.

The intention of the testator is expressed in language so clear that but one interpretation is possible, and, as we are to give effect to this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

intent, our duty is clear. By the fourth paragraph the testator, in giving his residuary estate to his four children, intended to provide that in case any of his children should die before the decease of his wife, Sophia Dale, leaving issue, the share of the child so dying "shall descend to and vest in his or her issue." Upon his death the real estate in question vested in the children, subject to their being divested by their not surviving the life tenant. Potruch took no greater interest in the premises than his grantors had power to convey, and it was therefore liable to be divested by this contingency. The title of Annie Schwartz under the foreclosure was no better than that obtained by Potruch, and it follows that the plaintiff was unable to give a good title to the property, and judgment may be entered in favor of the defendant in accordance with the terms of the stipulation. See Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334; Flanagan v. Staples, 28 App. Div. 319, 51 N. Y. Supp. 10.

WOODWARD and MILLER, JJ., concur. GAYNOR, J., reads for judgment for the plaintiff, with whom JENKS, J., concurs.

GAYNOR, J. (dissenting). By the third clause of his will the testator devises the land in question to his wife for life, and then by the fourth clause, "at the death of my said wife," to his four children, "share and share alike, to have and to hold the same to them and their heirs and assigns forever." These words undoubtedly vested at the moment of the testator's death an absolute future estate in fee in each of the said children, subject to the wife's life estate. The words, "at the death of my said wife," do not refer to the time of such vesting, i. e., the vesting in interest, but only to the future vesting in possession, viz., at the termination of the life estate. Moore v. Lyons, 25 Wend. 119; Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20; Ackerman v. Ackerman, 63 App. Div. 370, 71 N. Y. Supp. 780; Davidson v. Jones, 112 App. Div. 254, 98 N. Y. Supp. 265; Trowbridge v. Coss, 126 App. Div. 679, 110 N. Y. Supp. 1108.

But it is said that this devise is cut down by the words which immediately follow it from an absolute vested estate, either to a contingent one, or else to a vested estate liable to be divested by the death of the devisee during the running of the precedent life estate, viz.:

"And in case any of my said children shall have died leaving issue, the share of the child so dying shall descend to and vest in his or her issue, and in case of the death of any child not leaving issue, his or her share shall descend to and vest in his or her surviving brothers and sisters."

It is plain that it is not cut down to a contingent estate, for a future estate is contingent only when "the person to whom or the event on which it is limited to take effect remains uncertain" (Real Prop. Law [Laws 1896, p. 564, c. 547] § 30); which is not the case here. The persons and the event were both certain, and the estate vested at once on the testator's death in his children. Nor was it cut down to a vested estate liable to be divested by the death of the devisee during the existence of the precedent life estate. The settled rule is that such a construction is to be avoided if the will will bear the contrary construction.

The law disfavors such a disinheritance of the remainderman; it favors the absolute vesting of the estate in him; and therefore the words, "and in case any of my children shall have died," are to be construed as meaning during the life of the testator, unless the context, or society of words in which they are found, plainly prevent it (cases supra). In place of preventing it here, the context is consistent with that meaning. The words of devise concededly vest an absolute estate at the testator's death; and the said words following simply mean that if any child shall have died, so that the estate cannot so vest in him or her, it shall "vest" instead (for that is the word used) in his or her issue, or surviving brothers and sisters if there be no issue. The words certainly have to be taken to mean that if any child "shall have died" during the testator's lifetime, the share that would have vested upon the testator's death under the will in such child shall vest instead in his or her issue, or surviving brothers and sisters. If that were not the meaning there would be an intestacy in respect of any such child. The further meaning, viz., that the testator also meant any child dying during the life-tenancy should not be added unless the context plainly requires it, and it does not. A construction which would tie up and complicate the title should not be adopted unless the words used are plainly of that meaning, i. e., plainly show that that was the testator's intention. Settled rules of construction have to be adhered to unless overridden by the clearly expressed intention of the testator. Title to this property was taken in good faith from the life tenant and the four devisees, who survived the testator, and was also conveyed again. It should not be upset on a construction of the will which is not required by the words of the testator.

There is another settled rule against the construction claimed by the defendant, viz., where words apt to vest an absolute estate are used, it cannot be cut down by subsequent words which are equivocal, or do not express an intention to that effect as clearly and unmistakably as the preceding intention is expressed. Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388; Banzer v. Banzer, 156 N. Y. 429, 51 N. E. 291; Goodwin v. Coddington, 154 N. Y. 283, 48 N. E. 729.

In the case of Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334, the will vested the title in trustees for the lifetime of a son, and did not vest the remainder at the testator's death in remaindermen, but postponed such vesting until the death of such son, leaving it contingent in respect of who the remaindermen should be; whereas here there was no trust but a vesting of title in the remaindermen at once upon the testator's death, the only question being whether such vested title was liable to be afterwards divested. The two cases are different.

The plaintiff should have judgment.