In the Matter of the Accounting of MARINE TRUST COMPANY OF BUFFALO, as Sole Surviving Trustee for EVELYN L. SIEVERS under the Will of JOHN M. FEDDERS, Deceased

Surrogate's Court, Erie County, April 9, 1946.

*William H. Means* and *Howard G. E. Smith* for Marine Trust Company of Buffalo, petitioner.

*Daniel J. Kenefick* and *Mary Dora Taylor* for Theodore C. Fedders, respondent.

*Edward J. Garono* and *Irma R. Thorn* for Florence C. F. Dreher, respondent.

*Robert W. McNulty* and *Regis O'Brien* for Donald Fedders, respondent.

VANDERMEULEN, S.   John M. Fedders died April 25, 1934, leaving a last will and testament which was probated in the Surrogate's Court on May 18, 1934, on which day letters testamentary and of trusteeship were issued by this court to Louis F. Fedders and the Marine Trust Company of Buffalo.   By the terms of this will all of the rest, residue and remainder of his estate (after payment of certain specific bequests) was devised and bequeathed to his executors and trustees in trust, to pay over the net income to his daughter, Evelyn L. Sievers, during her natural life, and then provided in article " Fifth (c) ": " (c) Upon the death of my said daughter (Evelyn L. Sievers), I direct that my trustees shall pay to the children of my said daughter, in equal shares, the entire balance of said trust fund then remaining in their hands.  If my said daughter shall die, leaving no child or children her surviving, then and in such event, I will and direct that my trustees pay the entire balance remaining in their hands at the time of the death of my said daughter, in equal shares, to my brothers and sisters, namely, LOUIS F. FEDDERS, CHRIST W. FEDDERS, THEODORE C. FEDDERS, WILHELMINA M. COUSE and LOUISE DETENBECK, per stirpes and not per capita."

All of the brothers and sisters of John M. Fedders, and his daughter, Evelyn L. Sievers, survived him.   The latter died on January 1, 1945, leaving no issue or descendants.   Letters testamentary under her will were issued by this court to Frederick W. Sievers on the 9th of February, 1945, and he is still acting as such executor.

Prior to the death of Evelyn L. Sievers, Louis F. Fedders, brother of the deceased, died on February 4, 1942, leaving no child or grandchildren, except an adopted son, Donald L. Fedders, and his wife, Florence Fedders (now Florence Fedders Dreher).   The last will and testament of Louis F. Fedders

was duly probated in this court in February, 1942, and letters testamentary and of trusteeship under said will were issued by this court to Theodore C. Fedders on the 13th day of February, 1942, and he is still acting as such executor and trustee.

Also prior to the death of Evelyn L. Sievers, Wilhelmina M. Couse, sister of the decedent herein, died on May 15, 1944, leaving no child or grandchildren her surviving. The last will and testament of this decedent was duly probated by this court in May, 1944, and letters testamentary were issued to Warren E. Detenbeck and Theodore Warren Detenbeck on May 25, 1944, and they are still acting as such executors.

Donald L. Fedders was adopted by Louis F. Fedders and his wife, Florence Fedders, by order of the County Court dated October 20, 1917, and recorded in the Office of the Clerk of Erie County on April 5, 1918.

The question presented is to whom the respective shares of Louis F. Fedders and Wilhelmina M. Couse, who as hereinbefore stated survived the testator but predeceased the life beneficiary, are to be paid.

The first problem that confronts this court is whether the remainder vested at the death of the testator.

Section 40 of the Real Property Law provides: " 40. When future estates are vested; when contingent. A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

It was said in *Moore* v. *Littel* (41 N. Y. 66, 76): " If there ' is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate, then that remainder is vested ' within the terms of the statute. It is not ' a person who *now has a present* fixed right of future possession or enjoyment,' but a person who would have an immediate right if the precedent estate were now to cease. I read this language according to its ordinary and natural signification, and if you can point to a human being and say as to him, ' that man or that woman, by virtue of a grant of a remainder, would have an immediate right to the possession of certain lands if the precedent estate of another therein should now cease,' then the statute says, he or she has a vested remainder."

It was said in *Lewisohn* v. *Henry* (179 N. Y. 352, 362):
" There was no present gift to any child, but when or provided
the child reached the age specified. No part of the capital was
to go to the children until the time fixed for absolute transfer
to them should arrive. The direct gift to the executors and
the absence of any gift of capital to the children in the first
instance, show that there was no intent to vest title in them
prior to the date named for distribution. The gift of capital
to the children was through the direction to convey, and there
was no vesting until the time to convey came around. (*Matter
of Baer*, 147 N. Y. 348, 354; *Matter of Crane*, 164 N. Y. 71, 76.)"
(See, also, *Matter of Trevor*, 120 Misc. 22, affd. 239 N. Y. 6.)

In the instant matter there is a direct gift to the executors
and an absence of a gift of the remainder to the brothers and
sisters.

In *Matter of Crane* (164 N. Y. 71, *supra*) the court quoted
the following from *Smith* v. *Edwards* (88 N. Y. 92): " ' It has
been often held, that if futurity is annexed to the substance of
the gift, the vesting is suspended; * * * that where the
only gift is in the direction to pay or to distribute at a future
time, the case is not to be ranked with those in which the pay-
ment or distribution only is deferred, but is one in which time
is of the essence of the gift.' "

An example of a contingent remainder is found in *Matter of
Curtis* (252 App. Div. 256, affd. 278 N. Y. 589) wherein a trust
was set up for a daughter with the provision that the income
should be paid to her for life and at her death the executors
were directed " to divide the principal among her children as
they shall respectively become of age, in the meanwhile adding
the income of their respective shares to the principal." The
life tenant had five children, all of whom were alive at the
time of the testator's death, but two of the life tenant's children
predeceased the life tenant. The question to be decided was
whether a vested remainder came into being at the death of
the testator in favor of the five children of the life tenant, or
whether there was only a contingent remainder. This case
illustrates the " divide and pay over " canon, the court saying
at page 259: " In the paragraph of the instant will it will be
noted that there are no words or provisions which directly or
indirectly import a personal or vested gift or which indicate
such an intent, but instead a gift to the executors in trust to
invest the principal and pay the income therefrom to the bene-
ficiary during her natural life, and upon her decease the prin-
cipal sum to be paid to her children.

" The will contains no words of a personal gift and the gift is found only in the direction to divide or pay over at a future time, so that futurity is annexed to the substance of the gift, it is contingent, and in such a case it is perfectly well settled that the gift will not vest in the remaindermen until the time for payment arrives. This is the so-called ' divide and pay over ' rule, and is a canon of construction applied in an effort to answer the primary question, namely, the testator's intention. (See *Smith* v. *Edwards*, 88 N. Y. 92; *Delaney* v. *McCormack*, id. 174, 183; *Delafield* v. *Shipman*, 103 id. 463; *Matter of Baer*, 147 id. 348, 354; *Clark* v. *Cammann*, 160 id. 315.; *Matter of Crane*, 164 id. 71; *Wright* v. *Wright*, 225 id. 329; *Matter of Buechner*, 226 id. 440; *Matter of Bostwick*, 236 id. 242.)"

In *N. Y. Life Ins. & Trust Co.* v. *Winthrop* (237 N. Y. 93, 102) Judge CARDOZO said: "The mandate is to distribute among issue, and ' in default of such issue ' among next of kin. But in default of issue when? It happens that none were born. Plainly, if any had been born, their interests would have been defeasible, at least until their mother's death. * * * The very provision for the substitution of another class, the class of next of kin, is a token that survivorship was thought of as a condition of the gift * * *. We deal, therefore, with a gift which, at least up to a certain point, was contingent and defeasible, a gift to which survivorship at some time in the future was annexed as a condition. Since a contingency existed, since the testator did not intend that the interests of issue should vest as soon as they were born, his expectation must have been that the vesting would be postponed until the trust was at an end (*Bowman* v. *Bowman, supra; Young* v. *Robertson*, 4 Macq. 314, 319, 320; *Vincent* v. *Newhouse*, 83 N. Y. 505, 511). If it was postponed till then for issue, it was postponed for next of kin."

The court held that survivorship being a condition, it is survivorship at the time of distribution.

In *May* v. *May* (209 App. Div. 19, 21) the court said: " Where, as here, there is no gift, but a direction to executors to pay over and distribute at a future time, the interest of the beneficiaries is not vested until that time arrives, and is conditional upon survivorship. (*Warner* v. *Durant*, 76 N. Y. 133; *Salter* v. *Drowne*, 205 id. 204, 216.) The divide and pay over rule is a canon of construction, and unless a contrary intent is to be gathered from the will, it must be applied to the case at bar, in view of the fact that there is a provision for a substituted gift in favor of the issue of any deceased child. (*Dickerson* **v.**

*Sheehy,* 209 N. Y. 592, 596.) It seems clear that testatrix intended to confine the remainder to her children and their descendants, and never contemplated providing for the husbands of those dying without issue.''

The section of the will now under consideration is fraught with much uncertainty; uncertainty as to whether the daughter would have a child or children born unto her and if born would survive her. The testator recognized the uncertainty of his brothers and sisters, or some of them, surviving his daughter and directed by the words '' per stirpes and not per capita '' how the share of any deceased brother or sister should be disposed of by use of those words.

The testator created no vested remainder but simply provided a method of distribution of the corpus of his estate. It is significant to note that he directs a payment in equal shares to the named brothers and sisters, thus dividing the corpus into five parts, one part to go to each branch of the family. In other words, the remainder is not vested or given as a whole to the five brothers and sisters but is divided into equal parts and then given. The direction of the division of the remainder is a factor to be considered in determining that the divide and pay-over rule applies.

In contending that this is a vested remainder, counsel for Mrs. Dreher stresses to some extent that in some cases which hold to the rule of contingent remainder, the remaindermen were not named except as a class, as distinguished from a gift to named individuals of a class.

In *Matter of Weekes* (174 Misc. 930, 931–932, affd. 260 App. Div. 1014), Surrogate FOLEY pointed out that '' Ordinarily, a gift to issue *per stirpes* creates a contingent remainder '' and stated: '' In that case (*Schwartz* v. *Rehfuss,* 129 App. Div. 630, affd. 198 N. Y. 585) the testator created a life estate for the benefit of his wife. At the death of the wife the will provided for a gift to the children *nominatim,* but further provided that in case any of the children should have died leaving issue, the issue would take the share of such deceased child. The remainder was held to be contingent.'' (Parenthesis mine.)

In connection with the disposition of the remainder at the death of the life beneficiary without children born to her, the testator directed it be paid in equal shares to Louis F. Fedders, Christ W. Fedders, Theodore C. Fedders, Wilhelmina M. Couse and Louise Detenbeck, *per stirpes and not per capita.* The italicized words mean something or nothing. If they mean

nothing, they are surplusage. The court, however, should endeavor to spell out a meaning consistent with the intention of the testator. Most people in making wills do not use words with the intention that they should be meaningless. If they are to be meaningless, why use them at all?

"'We must also keep in mind that no words used by the testator should be cast aside as meaningless, but that effect must be given if possible to every word and provision.'" (*Matter of Leonard,* 143 Misc. 172, 180, and cases therein cited; *In Re Grube's Will,* 7 N. Y. S. 2d 794. See, also, *Matter of Buehner,* 226 N. Y. 440, 443.)

"When descendants take by representation of their parent, they are said to take *per stirpes;* that is, children take among them the share which their parent would have taken, if living." (2 Bouvier's Law Dictionary [Rawle's 3d Revision], p. 2558.)

"Per stirpes" only means go to the nearest class of relatives and divide by the total of that class, descendants of a deceased member of such class taking the parent's share. (*Matter of Foster,* 144 Misc. 622; also *Matter of Samson,* 257 N. Y. 358.)

"Descendant" is not limited in its meaning to a person who proceeds from the body of another but also means one on whom the law has cast the property by descent, and in this sense, the term is frequently held to include an adopted child and that such child is as lawfully in the line of descent as if placed there by birth. (See Black's Law Dictionary [3d ed.], pp. 563–564, and the cases cited therein.)

In deciding who is to receive the share of Louis Fedders, this court is presented with the problem of whether or not Donald Fedders, adopted son of Louis Fedders, takes by representation the share of his foster father who predeceased the life tenant, leaving no other children.

In arriving at a decision, this court is confronted with *Matter of Hodges* (294 N. Y. 58), which involved the construction of a will by which the testatrix gave her property to her son; if he did not survive her she gave it to his wife. Both predeceased the testatrix, the wife surviving the son. The appellant was an adopted child of the son and claimed his share. The court at page 60 said: "In *Hopkins* v. *Hopkins* (202 App. Div. 606, 236 N. Y. 545) and *Matter of Hall* (234 App. Div. 151, 259 N. Y. 637) it was held that no statute of this State entitled an adopted child to inherit from the next of kin of its foster parents. There has been no statutory change in the law as there declared. Any extension thereof must be made by the Legislature."

But the ruling in *Matter of Hodges* (*supra*) does not mean that a testator by his own act or by words of his own choosing cannot direct a distribution which in some instances may embrace adopted children. This problem is not so much a question of inheriting from the next of kin of the foster parent as it is a question of the intent of the testator. Is the language of the gift or devise such that the testator intended, either by the use of the words themselves or by the previous interpretation of the words and language of the courts, to deem the adopted child a representative of the foster parent's branch of the family? The testator declared the remainder should pass to five branches of the family and by the use of the words " per stirpes and not per capita " that the share or shares of the brothers or sisters predeceasing the life beneficiary shall follow the line of descent — shall come through representation to the descendants of such deceased brothers or sisters. The courts have held that an adopted child is a lineal descendant of a foster parent through the command of the statute■

In *Matter of Cook* (187 N. Y. 253, 261) it was said: " The Appellate Division, in rendering judgment, seem to have been controlled by the words ' lineal descendant,' but they must be read in connection with the statute governing the effect of adoption. That effect, as we have seen, is to make the child by adoption and his heirs the same in every respect, affecting inheritance or succession, as an actual child and his heirs. The natural relation and the statutory relation are made one and the same as to the devolution of property. If the legislature could do this, it has done it and it is not denied that it could do it.

" A lineal descendant is one who is in the line of descent from a certain person, but, since the Domestic Relations Law went into effect, not necessarily in the line of generation. The line of descent is the course that property takes according to law when the owner dies. By force of the statute that course is the same in the case of adopted children that it is in the case of own children. In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature." (See, also, *Matter of Walter*, 270 N. Y. 201; *Bourne* v. *Dorney*, 184 App. Div. 476, affd. 227 N. Y. 641.)

*United States Trust Co.* v. *Hoyt* (150 App. Div. 621, same case 223 N. Y. 616) is strikingly similar to the instant matter.

In *Hopkins* v. *Hopkins* (202 App. Div. 606, *supra*) cited in *Matter of Hodges* (294 N. Y. 58, *supra*) the appellate court in 202 Appellate Division 606, distinguished that case from *United States Trust Co.* v. *Hoyt, (supra)*.

In *United States Trust Co.* v. *Hoyt (supra)* Rhoda E. Hoyt executed and delivered a deed of trust to her property, giving Frank R. Hoyt, a son, the interest, income and profits during his life; upon his death the interest, income and profits were given for life to his wife, Margaretta; upon her death or remarriage, or upon the death of the son, Frank, if he outlived his wife, the principal of the trust fund was to be divided into as many equal shares as there were children of the said son, Frank, then living and to be paid over to each of said children of the son, Frank, one equal share or portion of said principal. In the event that any of the children of the son should have died before the time of distribution of the principal, as above provided for, leaving child or children him surviving, such child or children are to take the share or portion of their deceased parent, and in equal shares if more than one. In case there shall be no issue of the son, Frank, living at the time of the disposition of the principal as above provided for, then the principal shall be paid over to and among the persons who are then next of kin of the son, Frank, in the manner and proportion directed by the laws of the State of New York for the distribution of the estates of persons dying intestate. Dorothy Hoyt had been adopted by Frank R. Hoyt and Margaretta, his wife, from the Nursery and Child's Hospital on or about December 4, 1894. The question presented was whether Frank R. Hoyt's adopted daughter, Dorothy, was the sole next of kin of her foster father, and as such entitled to all the property as to which he died intestate, or whether his brother, sister, nephew and nieces are his next of kin under the Statute of Distributions of this State. It was held that the adopted child was entitled to the entire remainder to the exclusion of the collateral relatives.

In the instant matter, the testator has directed by the words " per stirpes " that the principal go to the descendants of the deceased brother, and the Court of Appeals has determined that an adopted child is a descendant. In this matter, as in *United States Trust Co.* v. *Hoyt* (150 App. Div. 621, *supra*), there are foster fathers, each having an adopted child unrelated by ties of blood descendancy to those executing the respective instruments governing disposition of their respective properties.

In endeavoring to ascertain the intention of the testator,

consider what he could have done but did not choose to do. He could have simply directed a distribution of the entire remainder or equal parts of the remainder to the brothers and sisters. He could have used the words " issue of the blood " or " heirs of the blood ". He could have left the remainder, in the event of the death of any of the brothers or sisters, to their respective spouses. He could have left the share of the predeceased brother or sister to his or her estate.

Donald Fedders was adopted by Louis Fedders and his wife approximately seventeen years before the will of John M. Fedders was made and executed. The testator having made his brothers and sisters beneficiaries under his last will and testament, it is fair to assume that the family relationship was friendly. This being so, it is fair to assume that he knew Donald was the son of Louis and his wife by adoption. Under all the circumstances it is reasonable to believe that he did not intend to exclude him from those who would take by a per stirpes distribution, for he could easily have stated such intention in the testamentary instrument.

Briefly and pointedly the deceased directed a per stirpes distribution of the remainder of his estate, in the event of the death of any brother or sister. The adopted son, Donald Fedders, comes within the realm of distributees included in such a distribution and is entitled to that part of the remainder of the estate herein which would have been paid to Louis Fedders had he survived Evelyn L. Sievers, the life beneficiary.

Wilhelmina M. Couse having died subsequent to the death of the testator and prior to the death of the life beneficiary, that part of the estate that would have been paid to her had she survived the life beneficiary is to be paid to her distributees per stirpes.

Let the decree of judicial settlement provide accordingly.