W. Vincent Grady, S.
Application has been made for the final judicial settlement of the accounts of Joseph P. Davis, as temporary administrator and as executor of the last will and testament of Mary Bergen, deceased. An answer and objections to the account were filed by Howard Bergen, Ruth Bergen and Gladys Torrey Dickerson claiming that they are adopted children of testatrix’ predeceased second cousins and as such are entitled to share in said residuary estate the same as the natural children of predeceased second cousins. [See Matter of Bergen, 22 Misc 2d 762.]
After hearing respective counsel and reading the memoranda submitted by the respective parties and after reading the will and the papers on file herein and after due deliberation thereon, the court decides and finds as follows:
It appears that Mary Bergen died a resident of Dutchess County, New York on February 19, 1958 leaving a will dated January 25, 1949 and two codicils dated July 16, 1953 and September 6,1956, respectively, which were admitted to probate on December 1,1958 in this court.
It also appears that Ruth Bergen and Howard Bergen were adopted by A. Beekman Bergen, a second cousin of testatrix, on December 21,1912 and on March 10,1913, respectively, and that Gladys Torrey Dickerson was adopted by Ida Magaw Bergen Torrey, a second cousin of testatrix, on September 30, 1919. Both of these second cousins predeceased testatrix and the question before the court is whether their adopted children share in this estate.
Paragraph numbered ‘1 Twenty-Second5 ’ of said will bequeaths one half of the residue of the estate to the Fallkill National Bank & Trust Co. of Poughkeepsie, New York, as trustee of a trust fund created in paragraph numbered “ Sixteenth ” for the benefit of the Dutch Reformed Church of New Hackensack, Dutchess County, which does not require construction at this time. It further provides that “ The remaining share or part shall be divided by my Executors into as many parts or shares as I may leave second cousins surviving me and second cousins who shall have predeceased me leaving child or children surviving them, and I hereby give, devise and bequeath one of such shares or parts to each of my second cousins surviving me and one of said shares or parts to the child or children of each of my second cousins who have predeceased me in equal shares. It is my intention that the child or children of each second cousin who shall have predeceased me shall take his or her or *806 their parents share or part. To further illustrate, if any second cousin shall predecease me leaving more than one child the share of said second cousin shall be equally divided among his or her children.”
It appears that the decedent left her surviving 14 second cousins, while 9 second cousins had predeceased decedent, leaving 15 natural children and 3 adopted children surviving them and decedent.
The general rule concerning inheritance by adopted children in this State is set forth in the case of New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11 [1899], affd. 22 App. Div. 80) where it was held that “lawful issue” means descendants through the blood and not adopted children, if there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered.
The Viele decision was reaffirmed in Matter of Peabody (17 Misc 2d 656 [1959]) wherein a son, George Peabody, was named life beneficiary by his mother, with remainder to “ the then living child or children of my said son”, and to the “issue or descendants of any deceased child of his having issue or descendants then surviving, equally, share and share alike, per stirpes and not per capita absolutely.” George Peabody died in 1958 leaving one natural born son and a foster son, adopted in 1937 which was 11 years after testatrix’ death and 18 years after the execution of her will. Surrogate Hazelton held that under these circumstances the adopted child obviously could not have been within the contemplation of the testatrix as an object of her bounty. He then cited the Viele case (supra), holding that in the absence of a contrary intention appearing either in the instrument itself or under extraneous evidentiary facts, it is presumed that a testator who was a stranger to an adoption, contemplated only the natural offspring of the named parent, as the objects of Ms bounty.
However, the Peabody case is easily distinguishable from the instant case because in the former, the adoption took place 18 years after the execution of the will, while in the latter the adoptions took place over 30 years prior to the will. In the Viele case the term “lawful issue” was used, which distinguishes it from the instant case where the term “children” was used. This distinction is very ably explained by Judge Fuld of the Court of Appeals in Matter of Upjohn (304 N. Y. 366, 373-374 [1952]). He stated, “Embodied in our adoption statute is a fundamental social concept that the relationship of parent and cMld, with all the personal and property rights incident to it, may be established, independently of blood ties, by operation of law, and that has been part of the public policy of *807 this state since 1887 (Domestic Relations Law, § 115 * * *). The statute unequivocally ordains that ‘ The foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other. ’ By reason of that provision, we have held,1 the adopted child, in a legal sense, became the natural child of the adoptive parent. ’ (Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101,108.) 1 In the eye of the law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature. ’ (Matter of Cook, 187 N. Y. 253, 261.) * * * Wills, too, must be read and construed in harmony with the legislative policy of placing adopted children on a level with natural born offspring. (See Gilliam v. Guaranty Trust Co., 186 N. Y. 127 ***.)*** Terms such as 6 issue ’, ‘ lawful issue ‘ descendants ’ — and the word 1 children ’, as well—may or may not include adopted children; read alone, and apart from context, those words are ambiguous. If they are viewed in their historical sense, they do not include foster children, because adoption is purely a creature of statute, unknown to the common law. (See 3 Restatement, Property, § 265, comment e; § 287, comment a.) If, though, they are read in the light of the adoption statute — as properly they may be * * * — they do include a foster child. * * * It has been said that the terms ‘ issue ’ and ‘ descendants ’ ‘ probably carry a stronger connotation of blood relationship than the word “children ” ’”. Judge Ftjld further stated (p. 375 that “ The rule in this state, declared in New York Life Ins. & Trust Co. v. Viele [supra], is that the limitation will be construed to designate only those related to the named ancestor by blood if ‘ there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered ’. In other words, in the absence of any indication of the testator’s intent, it will be assumed that the testator did not envisage adopted children taking under the limitation. That, though, is a rule of construction and nothing more. Where the testator’s design to include an adopted child is clear, the limitation will be construed to effectuate that intention.” In the Upjohn case when the testator drew his will he had full knowledge of the adoption. It had taken place 11 years earlier. Judge Ftjld further stated (pp. 375-376) that “Where it appears that he knew of the adoption, he is taken, therefore, to have intended inclusion of the adopted child, and his will is so construed, *808 unless other language in the will or other circumstances reflect a different or contrary intention. * * * ‘ Thus/ writes one commentator. ‘ If the adoption occurred before the execution of an instrument, such a will or deed of trust, which made provision for the adopter’s children or issue, and the testator or settlor knew of the adoption, and particularly if he approved of it, the adoptee has usually been deemed to be within the designation.’ ” It was further stated (p. 379) in this case that “ The danger of fraud arises where the adoption takes place without the testator’s knowledge, especially when it occurs after his death. That was, we observe, the situation in Matter of Leask, 197 N. Y. 193, and it is one circumstance that thoroughly differentiates that case from the one under consideration.”
In the instant case, the adoptions took place over 30 years before the execution of the will. This fact by itself is presumptive evidence that testatrix knew of the adoptions and it is reasonable to assume under the circumstances that she' must have known her second cousins who were the objects of her bounty 'even though she did not designate them by name, and knowing them it is reasonable to assume that she knew their children, and whether they were the “natural children” or “adopted children” of the second cousins. By designating them in her will merely as ‘ ‘ children ’ ’ and not as 11 issue ’ ’ or as “ descendants of the blood ” indicates that she did not wish to exclude the adopted children from sharing in her estate.
This line of reasoning was followed in Matter of Fedders (187 Misc. 207 [1946]) wherein the question was whether an adopted son is entitled to a deceased brother’s share. It was held (see p. 208) that “ ‘ Descendant ’ is not limited in its meaning to a person who proceeds from the body of another but also means one on whom the law has cast the property by descent, including an adopted child.”
“ "While it has been held in Matter of Hodges (294 N. Y. 58) that an adopted child is not entitled to inherit from the next of kin of its foster parents, such ruling does not mean that a testator, by his own act, cannot direct a distribution which in some instances may embrace adopted children. The question is not so much one of inheritance as it is of the testator’s intent, that is, did he intend to deem the adopted child.of the foster parent’s branch of the family.”
‘ ‘ Moreover, had the testator intended otherwise, he, could have used the words ‘ issue of the blood ’ or 1 heirs of the blood ’ or he could have left the remainder in the event of death of any of the brothers or sisters to their respective spouses or to their respective estates, but he did not choose to do so.”
*809 ‘ ‘ The adopted son in this instance had been adopted seventeen years before the making of the will and it is fair to assume that testator knew that the son was a son by adoption. Under all circumstances, it is reasonable to believe that he did not intend to exclude him from those who would take by a per stirpes distribution for he could easily have stated such intention in the will. ’ ’
Also, see Matter of Charles (200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776) wherein Surrogate Frankexthaler pointed out that the claim of the adopted children was based solely on their membership in the class of permissible appointees, designated by the testatrix as ‘ ‘ children ” of a named ancestor and held that they were included within the meaning of the word ‘ ‘ children ’ ’ as used in the will, He stated at page 455: ‘ ‘ Where there is a simple gift to such a class, adopted children may ordinarily participate therein unless language appears in the instrument showing an intention to exclude them”. (Matter of Horn, 256 N. Y. 294.) He further stated at page 460: “ "Where, therefore, there is a simple gift to children, no reason appears to discriminate between those born to the named ancestor and those adopted by him. Both are entitled to designation as children, one by force of nature and one by operation of law.” In this case the adoption did not take place until after the will was executed but no fraud was involved.
Also, see Matter of Horn (256 N. Y. 294, supra) wherein the Court of Appeals held that the adopted son was entitled to the $1,000 which would have passed to his foster mother had she survived the testator, stating on page 297: ‘ ‘ The only instance in which the adopted child is not deemed to be the child of the foster parent is where future estates may be cut off by such adoption.”
Also, see Matter of Myres (205 Misc. 880) where an adopted son was entitled to share in a testamentary trust under the assumption that a testatrix knew of the adoption by her son.
Also, see Von Beck v. Thomsen (44 App. Div. 373, affd. 167 N. Y. 601) where life insurance was paid to ail adopted child on the death of the beneficiary (the mother) under the general designation “ to her children”.
Also, see Matter of Day (10 A D 2d 220 [1st Dept., March 29, 1960]) wherein it was held that the donor was fully aware of the existence and status of the adopted child who was adopted about 10 years before the death of the donor and 8 years before the trust indenture was drawn and the child should be included among the issue of the donor’s children. This affirmed the lower court, but the Appellate Division went even further to state *810 that the grandchild adopted 7 years after the death of the donor should also be included stressing the public policy of the State in respect to adoptions.
It is evident from these many decisions that most courts favor adopted children sharing with natural children whenever possible, under the public policy of this State, to carry out the intent of section 115 of the Domestic Relations Law.
Therefore, in the case before me, since the adoptions took place prior to the execution of the will, and there is no question of defeating rights of remaindermen, and there is no evidence of a contrary intent in the will itself or from the extraneous facts, I find that Mary Bergen, in paragraph “ Twenty-Second ” of her will, by the term ‘1 children ’ ’, intended to include the adopted children of second cousins, namely Howard Bergen, Ruth Bergen and Gladys Torrey Dickerson, and they should share in the estate accordingly, and the accounts of petitioner should in all other respects be settled and allowed as filed.